IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| CAPITAL FUNDING, LLC<br><br>    1422 Clarkview Road<br>    Baltimore MD 21209<br>    county of residence: Baltimore City,<br><br>        Plaintiff,<br><br>    v.<br><br>AVI "ZISHA" LIPSCHUTZ<br><br>    17 Van Winkle Road<br>    Wesley Hills, NY 10952,<br><br>LARRY LIPSCHUTZ<br><br>    4775 Collins Avenue, Apt. 901<br>    Miami Beach, FL 33140<br><br>        Defendants. | Civil Action No. _____ |

**COMPLAINT FOR BREACH OF GUARANTY**

Plaintiff Capital Funding, LLC (the "Agent"), by and through its counsel, Katten Muchin Rosenman LLP, as and for its Complaint for Breach of Guaranty against defendants Avi "Zisha" Lipschutz ("Zisha") and Larry Lipschutz ("Larry") (collectively, the "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1. This is a breach of guaranty action for damages stemming from the Borrower's[1] failure to repay the outstanding Loan Obligations under the terms of a Loan Agreement in the principal amount of

---

[1] Undefined capitalized terms used in these opening paragraphs are defined below.

$31,110,090.97. The Defendants hereto, the guarantors of absolute and unconditional payment and performance under the Loan Agreement, have breached the Guaranty by failing to repay the outstanding Loan Obligations.

## THE PARTIES

2.  The Agent is a Maryland limited liability company with its principal office at 1422 Clarkview Road, Baltimore, Maryland 21209. The sole member of the Agent is CFG Community Bank, a Maryland state-chartered bank. CFG Community Bank's principal place of business is located at 1422 Clarkview Road, Baltimore, Maryland 21209. CFG Community Bank's sole member is Capital Funding Bancorp, a Maryland corporation, and its principal place of business is located at 1422 Clarkview Road, Baltimore, Maryland 21209.

3.  Defendant Zisha is an individual residing at 17 Van Winkle Road, Wesley Hills, New York 10952.

4.  Defendant Larry is an individual residing at 4775 Collins Avenue, Apt. 901, Miami Beach, FL 33140.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship in that the Agent's member is a citizen of Maryland, Zisha is an individual residing in New York and Larry is an individual residing in Florida. The amount in controversy herein exceeds $75,000, exclusive of interest and costs.

6.  This Court has personal jurisdiction over the Defendants under the terms of the Guaranty, pursuant to which the Defendants consented to all of the provisions of the Loan Documents, which include the Loan Agreement's jurisdiction clause providing for personal jurisdiction in Maryland.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Defendants are subject to personal jurisdiction in this District.

**FACTS**

**A. The Loan**

8. On or about March 4, 2014, the Agent, as a lender and as agent for all of the lenders thereto ("Lenders"), and 22 Maple Street, LLC, 25 Oriol Drive, LLC, 59 Coolidge Road, LLC, and 20 Kinmonth Road, LLC (collectively, the "Borrower"), as borrower, entered into that certain Loan Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement") for a loan in the principal amount of $36,856,627.00.  A copy of the Loan Agreement, the First Amendment dated June 30, 2014, and the Second Amendment dated July 21, 2014, are attached hereto as **Group Exhibit A**, respectively.

9. The Borrower obtained the loan to acquire the real estate located at 22 Maple Street, Amesbury, Massachusetts 01913; 25 Oriol Drive, Worcester, Massachusetts  01605; 59 Coolidge Hill Road, Watertown, Massachusetts  02472; and 20 Kinmonth Road, Newton, Massachusetts 02468.

10. Pursuant to the Loan Agreement, Borrower unconditionally promised to pay, among other things, the remaining principal amount of the loan on February 29, 2016 (the "Maturity Date") (Exhibit A § 2.1(e)(i)).

11. The Loan Agreement provided that Borrower's failure to pay the entire amount of the Debt (as defined in the Loan Agreement, which definition is incorporated herein) and other Loan Obligations (as defined in the Loan Agreement, which definition is incorporated herein and together with the Debt, shall be referred to as the "Loan Obligations" herein) on or before the Maturity Date constituted an Event of Default (Exhibit A § 8.1(a)).

12. The Loan Agreement also provided that the Borrower would be liable for all reasonable attorneys' fees and costs, and all other reasonable out-of-pocket expenses, incurred by the Lender in connection with the failure to pay or with respect to an Event of Default (as defined in the Loan Agreement, which definition is incorporated herein) or the exercise of any right or remedy under the Loan Agreement or any of the other Loan Documents (Exhibit A § 8.3).

13. The Agent is authorized to bring this Complaint on behalf of itself and the Lenders pursuant to, among other authorities, Section 8.2 of the Loan Agreement.

**B. The Guaranty**

14. On or about March 4, 2014, the Defendants each executed the Guaranty, a copy of which is attached hereto as **Exhibit B**.

15. Pursuant to the Guaranty, the Defendants "irrevocably and unconditionally" guaranteed the payment of the amounts owed by the Borrower under the Loan Agreement.

16. Pursuant to Section 1.1(b) of the Guaranty, Larry's guaranty of payment of the Loan Obligations was originally limited to payment up to $10,000,000 ("Larry's Guaranty Limitation"). Zisha's guaranty of payment of the Loan Obligations under the Guaranty was not limited, and Zisha was responsible for payment in full of the Loan Obligations to Agent and Lenders.

17. Pursuant to the Guaranty, the Defendants also agreed to pay the reasonable costs and expenses incurred by the Lenders in collecting any amounts due thereunder (including without limitation, attorneys' fees and costs). (Exhibit B § 1.7). The Defendants' obligations to pay such fees and expenses are not restricted to a specific limitation. (Exhibit B §§ 1.1(b) and 1.7).

18. The Guaranty is a guaranty of payment and performance and not of collection (Exhibit B § 1.2).

19.     The Guaranty remains in full force and effect by reason of which the Defendants are liable to the Agent and the Lenders for all amounts due thereunder.

    **C.**     **First Action on Guaranty and Forbearance Agreement**

20.     In 2016, the Borrower defaulted on its obligations under the Loan Agreement. The loan was accelerated and the Borrower failed to repay the Loan in full. The Agent thereafter demanded payment in full from the Guarantors.

21.     The Guarantors refused to fulfill their obligations and, on July 5, 2016, the Agent filed a complaint for breach of the Guaranty against Zisha, Larry, and a third individual, Dov Newmark ("Dov"), in the United States District Court for the District of Maryland under case number 1:16-cv-02485-ELH (the "First Guaranty Action").

22.     Following the filing of the First Guaranty Action, the Agent, the Borrowers and the Guarantors negotiated a forbearance arrangement whereby the Agent agreed to dismiss the First Guaranty Action in consideration of the Borrower's and Guarantors' agreements and covenants under that certain Second Forbearance Agreement, dated as of December 30, 2016 (the "Forbearance Agreement"). A copy of the Forbearance Agreement is attached hereto as **Exhibit C**.

23.     The Forbearance Agreement also amended the Loan Agreement by, among other things, (i) extending the Maturity Date under the Loan Agreement until December 30, 2017, (ii) removing Dov as a guarantor, (iii) reducing Larry's Guaranty Limitation to payment of up to $6,250,000, and (iv) limiting Zisha's guaranty to payment of up to $6,250,000.

24.     The Agent voluntarily dismissed the First Guaranty Action on January 5, 2017.

D. **Events of Default**

25. Since the execution of the Forbearance Agreement, Events of Default have occurred under the Loan Agreement and Financing Documents (as defined in the Loan Agreement, which definition is incorporated herein), including but not limited to:

(i) Borrower's failure to meet the terms of Section 4.12 of the Loan Agreement, as amended by the Forbearance Agreement, for the periods ending March 31, 2017, April 30, 2017, May 31, 2017, June 30, 2017, July 31, 2017, and August 31, 2017 in that the EBITDAR (as defined in the Loan Agreement and amended by the Forbearance Agreement, which definition is incorporated herein) of the Operator was less than the Minimum EBITDAR (as defined in the Loan Agreement and amended by the Forbearance Agreement, which definition is incorporated herein) required for such periods;

(ii) Borrower's breach of Section 8.1(w) of the Loan Agreement, based on the existence of a Forbearance Termination Event (as defined in the Forbearance Agreement, which definition is incorporated herein);

(iii) Borrower's breach of Section 8.1(w) of the Loan Agreement, based on the existence of a Forbearance Termination Event, as a result of the breach of the Revolving Loan Second Forbearance Agreement (as defined in the Forbearance Agreement, which definition is incorporated herein);

(iv) Borrower's breach of Section 8.1(w) of the Loan Agreement, based on the existence of a Forbearance Termination Event, as a result of Borrower's breach of Sections 6.10.1, 6.10.2, and 6.10.3 of the Forbearance Agreement, due to Zisha's failure to provide certain net worth documentation;

(v) Borrower's breach of Section 8.1(w) of the Loan Agreement, based on the existence of a Forbearance Termination Event, due to Larry's failure to provide certain net worth documentation;

(vi) Borrower's breach of Section 8.1(w) of the Loan Agreement, based on the existence of a Forbearance Termination Event, as a result of Borrower's breach of Section 6.13 of the Forbearance Agreement, due to Operator, Next Step and Synergy's (each as defined in the Loan Agreement, which definitions are incorporated herein) failure to propose a back office provider to Agent and Lenders at least one month prior to the Synergy Services Termination Date (as defined in the Forbearance Agreement, which definition is incorporated herein);

(vii) Borrowers' breach of Section 8.1(w) of the Loan Agreement, based on the existence of a Forbearance Termination Event, as a result of the Borrower's breach of Section 6.1.3 of the Forbearance Agreement due to Synergy's failure to stop providing Manager's (as defined in the

Loan Agreement, which definition is incorporated herein) back office services by the Synergy Services Termination Date; and

(viii) Borrower's breach of Section 8.1(f) of the Loan Agreement due to Borrower's and Operator's failure to provide Agent copies of federal tax returns as required by Section 4.6(c) of the Loan Agreement, and their further failure to provide such returns after Agent's issuance of a notice of default with respect thereto;

(collectively, the "Subject Events of Default").

26. By letters dated September 20, 2017, November 3, 2017 and again on November 21, 2017 (collectively, the "Notices of Default"), the Agent provided notice to the Borrower and the Defendants of the Subject Events of Default. Copies of the Notices of Default are attached hereto as **Group Exhibit D**.

27. As a result of the Subject Events of Default, the Agent accelerated the date for payment of the Loan Obligations. The Agent provided the Borrower and the Defendants notice of the acceleration by letter, dated December 1, 2017, and demanded that the Borrower or the Defendants immediately pay the outstanding Loan Obligations.

28. The Borrower failed to pay the outstanding Loan Obligations. The Borrower further defaulted on its obligations under the Loan Agreement by failing to meet the terms of Section 4.12 of the Loan Agreement, as amended by the Forbearance Agreement, for the periods ending September 30, 2017 and October 30, 2017 in that the EBITDAR of the Operator was less than the Minimum EBITDAR required for such periods.

29. The Defendants likewise failed to comply with their obligation to pay the outstanding Loan Obligations.

30. Accordingly, the Defendants are in default under the Guaranty.

31.    As of January 2, 2018, the Loan Obligations were outstanding in the amount of $31,110,090.97.  The Borrower and the Guarantors are further liable to the Agent for additional interest, fees and expenses, including, without limitation, attorneys' fees, that continue to accrue.

## FIRST CAUSE OF ACTION
### (Breach of Contract – Against Avi "Zisha" Lipschutz)

32.    The Agent repeats and repleads each allegation set forth in Paragraphs 1 through 31, inclusive, and incorporates them by reference herein.

33.    The Guaranty constitutes a valid and binding obligation of Zisha for the benefit of the Agent and the Lenders.

34.    The Agent and the Lenders have duly performed all terms and conditions of the Loan Agreement, the Guaranty and the Financing Documents.

35.    Zisha has breached the Guaranty by virtue of his failure to pay the Agent $6,250,000 of the Loan Obligations, plus reasonable attorneys' fees incurred by the Agent.

36.    As a result of Zisha's failure to pay the amounts owed under the Guaranty, the Agent and the Lenders have sustained damages in the amount of $6,250,000, plus additional amounts to be determined at trial.

## SECOND CAUSE OF ACTION
### (Breach of Contract – Against Larry Lipschutz)

37.    Agent repeats and repleads each allegation set forth in Paragraphs 1 through 36, inclusive, and incorporates them by reference herein.

38.    The Guaranty constitutes a valid and binding obligation of Larry for the benefit of the Agent and the Lenders.

39. The Agent and the Lenders have duly performed all terms and conditions of the Loan Agreement and the Guaranty.

40. Larry has breached the Guaranty by virtue of his failure to pay the Agent and the Lenders $6,250,000 of the Loan Obligations, plus reasonable attorneys' fees incurred by the Agent.

41. As a result of Larry's failure to pay the amounts owed under the Guaranty, the Agent and the Lenders have sustained damages in an amount of $6,250,000, plus additional amounts to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the Agent respectfully prays that this Court enter a judgment against Zisha and Larry as follows:

1. That Zisha be ordered to pay the Agent $6,250,000, plus attorneys' fees and expenses and any other amounts determined at trial on the First Cause of Action.

2. That Larry be ordered to pay the Agent $6,250,000, plus attorneys' fees and expenses and any other amounts determined at trial on the Second Cause of Action.

3. That the Agent be awarded such other and further relief as the Court may deem equitable, just and proper.

Dated:  January 23, 2018                    Respectfully submitted,

                                                 KATTEN MUCHIN ROSENMAN LLP
By: /s/ Joseph F. Fiorill
     Joseph F. Fiorill (Bar No. 13783)
     2900 K Street NW
     North Tower – Suite 200
     Washington DC  20007
     (202) 625-3500 / (202) 298-7570 (fax)
     joseph.fiorill@kattenlaw.com
     Kenneth J. Ottaviano (pro hac vice admission pending)
     Paige E. Barr (pro hac vice admission pending)
     525 W. Monroe Street
     Chicago IL 60661
     (312) 902-5200 / (312) 902-1061 (fax)
     Kenneth.Ottaviano@kattenlaw.com
     Paige.Barr@kattenlaw.com

     Counsel for Plaintiff Capital Funding, LLC