# EXHIBIT B

## SECOND FORBEARANCE AGREEMENT

This Second Forbearance Agreement (this "Second Forbearance Agreement") is made as of this 30th day of December, 2016 by and among 22 MAPLE STREET, LLC, a Delaware limited liability company having its principal office at 260 Chambers Bridge Road, Suite 2A, Brick, New Jersey 08723 (together with its successors and assigns, the "Amesbury Borrower"), 25 ORIOL DRIVE, LLC, a Delaware limited liability company having its principal office at 260 Chambers Bridge Road, Suite 2A, Brick, New Jersey 08723 (together with its successors and assigns, the "Autumn Borrower"), 59 COOLIDGE ROAD, LLC, a Delaware limited liability company (together with its successors and assigns, the "Emerson Village Borrower"), 20 KINMONTH ROAD, LLC, a Delaware limited liability company having its principal office at 260 Chambers Bridge Road, Suite 2A, Brick, New Jersey 08723 (together with its successors and assigns, the "Waban Health Center Borrower"; and the Amesbury Borrower, Autumn Borrower, Emerson Village Borrower and Waban Health Center Borrower each individually and collectively, "Borrower"), AVI "ZISHA" LIPSCHUTZ, an adult individual ("Zisha"), DOV NEWMARK, an adult individual ("Dov"), and LARRY LIPSCHUTZ, an adult individual ("Larry", and together with Dov and Larry and with their successors and assigns, each a "Guarantor" and collectively, jointly and severally, the "Guarantor"), CAPITAL FUNDING, LLC, a Maryland limited liability company, individually as a Lender, and as Agent (in such capacity, "Agent"), BANCALLIANCE INC., a Maryland corporation, CONGRESSIONAL BANK, a Maryland chartered bank, MVB BANK, INC., a West Virginia banking corporation, and AP MA FUNDING LLC, a Delaware limited liability company, and the financial institutions or other entities from time to time Lender parties hereto (each a "Lender" and collectively, the "Lender").

## RECITALS

WHEREAS, pursuant to that certain Loan Agreement dated as of March 4, 2014 (the "Original Loan Agreement") by and among Borrower, Agent and Lender, as amended by that certain First Amendment to Credit and Security Agreement dated as of June 30, 2014 (the "First Amendment") and that certain Second Amendment to Loan Agreement dated as of July 21, 2014 (the "Second Amendment"; and collectively with the First Amendment and Original Loan Agreement, the "Loan Agreement"), Agent and Lender agreed to make the Loan available to Borrower. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Loan Agreement.

WHEREAS, the Loan is evidenced by the following Notes: (a) that certain Term Loan Note dated as of March 4, 2014 in the original principal amount of $4,000,000 issued to MVB Bank, Inc.; (b) that certain Term Loan Note dated as of March 4, 2014 in the original principal amount of $6,856,627 issued to Capital Funding, LLC; (c) that certain Term Loan Note dated as of March 4, 2014 in the original principal amount of $22,000,000 issued to AP MA Funding, LLC; and (d) that certain Term Loan Note dated as of March 4, 2014 in the original principal amount of $4,000,000 issued to Congressional Bank.

148367.01600/103844311v.2

WHEREAS, the Notes are secured by: (i) that certain Deed of Trust and Security Agreement dated as of March 4, 2014 from the Amesbury Borrower in favor of and for the benefit of Agent and Lender and covering the property located at 22 Maple Street, Amesbury, Massachusetts 01913, (ii) that certain Deed of Trust and Security Agreement dated as of March 4, 2014 from the Autumn Borrower in favor of and for the benefit of Agent and Lender and covering the property located at 25 Oriol Drive, Worcester, Massachusetts 01605, (iii) that certain Deed of Trust and Security Agreement dated as of March 4, 2014 from the Emerson Village Borrower in favor of and for the benefit of Agent and Lender and covering the property located at 9 Coolidge Hill Road, Watertown, Massachusetts 02472 and (iv) that certain Deed of Trust and Security Agreement dated as of March 4, 2014 from the Waban Health Center Borrower in favor of and for the benefit of Agent and Lender and covering the property located at 20 Kinmonth Road, Newton, Massachusetts 02468.

WHEREAS, Agent, on behalf of Lender, has a first priority lien on the Collateral, subject only to the terms of that certain Intercreditor Agreement dated as of March 28, 2014, by and between Agent, Capital Finance, LLC, Borrower and Operator.

WHEREAS, pursuant to that certain Guaranty Agreement dated as of March 4, 2014, Guarantor guaranteed the payment of certain indebtedness and the performance of certain of Borrower's obligations to Lender under the Note on the terms set forth therein.

WHEREAS, the following Events of Default have occurred under the Loan Documents: (a) for the quarters ending June 30, 2015, September 30, 2015 and December 31, 2015, Borrower failed to maintain the Minimum EBITDAR covenants set forth in Section 4.12 of the Loan Agreement, which failure constituted Events of Default under Section 8.1(o) of the Loan Agreement (the "EBITDAR Defaults"); (b) the occurrence of a "Forbearance Termination Event" under that certain Forbearance Agreement dated as of February 12, 2016, by and between Borrower, Agent and Lender (the "First Forbearance Agreement") as a result of Borrower's failure to meet the conditions set forth in Section 4.4(ii)(a) of the First Forbearance Agreement (the "First Forbearance Agreement Termination Event"); and (c) Borrower's failure to pay the entire amount of the Debt and other Loan Obligations on or before the Maturity Date (the "Maturity Date Default" and collectively with the EBITDAR Defaults and the First Forbearance Agreement Termination Event, the "Existing Defaults").

WHEREAS, on June 22, 2016, as a result of the Existing Defaults, Agent notified the appropriate parties of: (a) Agent's exercise of its rights under the Subordination and Collateral Assignment of Management Agreement, and (b) Agent's exercise of its rights under the Assignment of Rents and Leases.

WHEREAS, as a result of the Maturity Date Default and Guarantor's failure to pay the guaranteed amount of the Debt and other Loan Obligations, Agent filed a complaint for breach of the Guaranty Agreement against Guarantor in the United States District Court for the District of Maryland (Civil Action No. 16-2485) (the "Guarantor Action").

WHEREAS, notwithstanding the Existing Defaults, Borrower has asked Agent and Lender to forbear from exercising any and all of their rights and remedies under the Loan Documents and/or applicable law.

WHEREAS, subject to the terms and conditions of this Second Forbearance Agreement, Agent and Lender agree to forbear from exercising any or all of their rights and remedies under the Loan Documents and/or applicable law as a result of the Existing Defaults, in each case without constituting a waiver of any of the Existing Defaults and on the express terms and subject to the conditions set forth herein.

## <u>AGREEMENTS</u>

NOW, THEREFORE, in consideration of the premises and of the mutual promises, covenants and agreements herein contained, and for other valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.   <u>Defined Terms; Interpretive Provisions</u>.

1.1.   <u>Certain Defined Terms</u>.   As used herein, the following terms have the corresponding meanings set forth below:

1.1.1.   "<u>Effective Date</u>" means the date on which all of the conditions specified in <u>Section 8</u> of this Second Forbearance Agreement are satisfied.

1.1.2.   "<u>Forbearance Default</u>" means Borrower's or Guarantor's breach of any representation, warranty or acknowledgement of this Second Forbearance Agreement, or failure in any way to perform any term, condition, obligation or covenant of this Second Forbearance Agreement within the time required therefor, if any.

1.1.3.   "<u>Forbearance Expiration Date</u>" means December 30, 2017.

1.1.4.   "<u>Forbearance Fees</u>" means all reasonable costs of Agent, Lender and Borrower associated with this Second Forbearance Agreement and the transactions and documents related thereto, including, but not limited to, out-of-pocket expenses associated with the transaction, professional fees, recording fees, search fees and filing fees.

1.1.5.   "<u>Forbearance Period</u>" means the period from the Effective Date until the Forbearance Termination Date.

1.1.6.   "<u>Forbearance Termination Date</u>" means the earlier to occur of (a) the Forbearance Expiration Date and (b) the date of the occurrence of a Forbearance Termination Event, subject to the cure period set forth in Section 7.2 below.

1.1.7.   "<u>Forbearance Termination Event</u>" means the occurrence of any of the following: (a) a Forbearance Default; (b) any default under any of the Loan Documents other than the Existing Defaults; (c) any Material Adverse Change; (d) any of the Loan Documents shall for any reason cease to be in full force and effect in accordance with their terms, or their

3

validity or enforceability shall be contested by any party thereto; (e) a judgment in an amount of $250,000 or less adverse to Borrower or Guarantor is entered in any legal proceeding and which is not satisfied or otherwise resolved by written agreement within thirty (30) days of its entry other than the judgment entered in favor of New England Therapy Associates; (f) a judgment in an amount exceeding $250,000 adverse to Borrower or Guarantor is entered in any legal proceeding; (g) any property belonging to any Borrower or Guarantor, or any material part thereof, is taken by execution, levy, attachment, forfeiture, sequestration or other process of law (other than in the nature of eminent domain); (h) any Borrower or Guarantor (i) execute an assignment for the benefit of creditors, or (ii) become or be adjudicated a bankrupt, debtor or insolvent under any bankruptcy or insolvency law, (iii) admit in writing its/his inability to pay its/his debts generally as they become due, (iv) apply for or agree by consent to the appointment of a conservator, receiver, trustee or liquidator of it/him or of all or a substantial part of its/his assets, (v) file a voluntary petition seeking relief under the provisions of title 11, United States Code, (vi) be the subject of an involuntary bankruptcy case commenced under 11 U.S.C. section 303, which case is not dismissed within thirty (30) days of its filing, (vii) file an answer admitting the material allegations of or consenting to, or default in, a petition filed against it/him in any proceeding under any debtor relief laws, or (viii) institute a voluntary bankruptcy case or be or become a party to any other judicial proceedings intended to effect a discharge of its/his debts, in whole or in part, or a postponement of the maturity or the collection thereof, or a suspension of any of the rights of Agent and Lender granted in the Loan Documents or this Second Forbearance Agreement; (i) any breach of the Revolving Loan Second Forbearance Agreement; (j) termination of Next Step as manager under the Next Step Management Agreement without cause and without the prior written consent of Agent; (k) the entry of any civil judgment with respect to the Medicaid Investigation and/or the ERISA Investigation in an amount of $250,000 or less and which is not satisfied or otherwise resolved by written agreement within thirty (30) days of its entry; (l) the entry of any civil judgment with respect to the Medicaid Investigation and/or the ERISA Investigation in an amount exceeding $250,000; and/or (m) the filing of any criminal complaint or the issuance of an indictment by any Governmental Authority in connection with the Medicaid Investigation and/or the ERISA Investigation.

   1.1.8.  "<u>Material Adverse Change</u>" means any event, change, circumstance or effect that has a material adverse effect on the business or financial condition of the Facilities, taken as a whole and measured from and after the date of this Second Forbearance Agreement; provided, however, that none of the following, either alone or in combination, will constitute, or be considered in determining whether there has been, a Material Adverse Change: any event, change, circumstance or effect resulting from or related to (i) any outbreak or escalation of war or major hostilities or any act of terrorism, (ii) changes in laws, regulations, GAAP or the enforcement or interpretation thereof, (iii) any action taken in accordance with this Second Forbearance Agreement or at the request of, or consented to in writing by, the Agent or Lender, or (iv) the execution or delivery of this Second Forbearance Agreement, the consummation of the transactions contemplated by this Second Forbearance Agreement or the public announcement or other publicity with respect to any of the foregoing set forth in this subsection (iv).

   1.1.9.  "<u>Next Step</u>" means Next Step Healthcare, LLC.

4

1.1.10. "Parties" means Borrower, Guarantor, Agent and Lender.

1.1.11. "Revolving Credit Agreement" means that certain Credit and Security Agreement dated as of March 28, 2014, as amended, restated, supplemented or otherwise modified from time to time, by and among the Revolving Loan Borrower, the Revolving Loan Lender and the Revolving Loan Agent.

1.1.12. "Revolving Loan Agent" means Capital Finance, LLC, a Maryland limited liability company.

1.1.13. "Revolving Loan Borrower" means Waban Heath Center, LLC, a Delaware limited liability company; Watertown Health Center, LLC, a Delaware limited liability company; Merrimack Valley Health Center, LLC, a Delaware limited liability company; and Worcester Health Center, LLC, a Delaware limited liability company.

1.1.14. "Revolving Loan Lender" means the Lenders that are party to the Revolving Credit Agreement.

1.1.15. "Revolving Loan Second Forbearance Agreement" means that certain forbearance agreement entered into on the date hereof by and between the Revolving Loan Agent, the Revolving Loan Lender and the Revolving Loan Borrower.

1.1.16. "Synergy" means Synergy Health Centers LLC.

1.1.17. "Synergy Services Termination Date" means the date Synergy stops providing back-office services for Manager pursuant to the Management Agreement, which in no event shall be later than nine (9) months after the Effective Date.

1.2. Interpretive Provisions. The meaning of defined terms shall be equally applicable to the singular and plural forms of the defined terms. The words "hereof," "herein," "hereunder" and words of similar import when used in this Second Forbearance Agreement shall refer to this Second Forbearance Agreement as a whole and not to any particular provision of this Second Forbearance Agreement. The captions and headings of this Second Forbearance Agreement are for convenience of reference only and shall not affect the interpretation of this Second Forbearance Agreement. The term "including" is not limiting and means "including without limitation." Whenever any performance obligation hereunder (other than a payment obligation) shall be stated to be due or required to be satisfied on a day other than a business day, such performance shall be made or satisfied on the next succeeding business day. In the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including;" the words "to" and "until" each mean "to but excluding," and the word "through" means "to and including."

2. Acknowledgements Concerning Loan and Defaults.

2.1. Truth of Recitals. Borrower and Guarantor acknowledge that, to the best of their knowledge, the above Recitals are true and accurate in all material respects, and incorporated within this Second Forbearance Agreement as if fully rewritten. As a condition to the signing of

this Second Forbearance Agreement, all parties are relying on the truth and completeness of the statements and representations made herein, including the Recitals, and all parties represent for themselves that this Second Forbearance Agreement contains no known material misrepresentations or omissions by any Party to this Second Forbearance Agreement.

2.2.    <u>Liability for Loan</u>. Borrower and Guarantor acknowledge and agree that, subject to the terms of this Second Forbearance Agreement, (a) Borrower is indebted to Lender for repayment of the sums due under the Loan and for payment and performance under the Loan Documents to which it is a party, and (b) Guarantor is liable to Lender for payment and performance under the Guaranty Agreement, subject to the terms thereof.

2.3.    <u>Status of Indebtedness</u>.

2.3.1.    Borrower and Guarantor acknowledge and agree that, as of December 30, 2016, the outstanding principal balance of the Loan is $33,531,449.32.  Interest in the amount of $234,720.18 has accrued as of December 30, 2016 and remains unpaid.

2.3.2.    Borrower and Guarantor further hereby ratify all of the Loan Documents to which they are a party and reaffirm all of their respective obligations with respect to the Loan as set forth in the applicable Loan Documents.  Borrower and Guarantor each hereby acknowledge, reaffirm and agree that the Loan Documents, as modified by this Second Forbearance Agreement, represent valid, binding obligations of Borrower and Guarantor to Agent and Lender enforceable according to the terms hereof.  Borrower unconditionally owes to Lender the full amount of the outstanding indebtedness secured by the Deed of Trust, including unpaid principal, accrued interest and other fees and charges provided for in the Note and the other Loan Documents.  Subject to the terms of this Second Forbearance Agreement, Borrower and Guarantor promise to perform all obligations under the Loan Documents to which they are a party in accordance with the terms thereof; provided, however, that the foregoing shall not obligate Borrower or Guarantor to cure any of the Existing Defaults except as otherwise expressly provided herein.

2.3.3.    Borrower and Guarantor acknowledge and agree that there are no existing defenses, claims, counter-claims, counter demands, or rights of setoff or recoupment whatsoever with respect to the Note, the Guaranty Agreement, or any of the other Loan Documents, or, if Borrower and/or Guarantor believes that there are, Borrower and Guarantor are waiving and releasing same pursuant to <u>Section 9</u> herein.  Borrower and Guarantor agree that each shall not assert or seek to assert any claim, set-off, defense or counterclaim of any kind or nature whatsoever with respect to the Note, the Guaranty Agreement, or any Loan Documents.

2.4.    <u>Acknowledgement and Preservation of Existing Defaults</u>.  Subject to the terms of this Second Forbearance Agreement, Borrower and Guarantor acknowledge, admit and agree that (a) the Existing Defaults are preserved and shall continue in existence, (b) this Second Forbearance Agreement does not constitute and shall not be construed as a waiver of the Existing Defaults, and (c) nothing in this Second Forbearance Agreement shall be construed as a waiver by Agent or any Lender of Agent's and Lender's right to assert and enforce the Existing Defaults upon the Forbearance Termination Date.

2.5.    <u>No Obligation to Forbear</u>.  Borrower and Guarantor each acknowledge that (a) Agent and Lender have no obligation to modify, extend, or otherwise amend the terms and conditions of the Loan Documents or to negotiate with Borrower or Guarantor or any other person or entity concerning any of the foregoing, and (b) except as set forth herein, Agent's and Lender's execution of this Second Forbearance Agreement does not otherwise create any such obligation.

3.    <u>Representations and Warranties of Borrower</u>.  Zisha certifies, represents, warrants and acknowledges that, to the best of his knowledge, and without any investigation, each of the following is true as to Borrower:

3.1.    <u>No Litigation</u>.  There is no litigation, prosecution, investigation or proceeding of any nature whatsoever now pending or, to the best of his knowledge, threatened against it that would materially and adversely affect performance of any obligations under this Second Forbearance Agreement or the other Loan Documents other than (i) two pending civil actions commenced by New England Therapy Associates in the state and federal courts of Massachusetts seeking monetary damages in the approximate amount of $193,000 against, among others, Merrimack Valley Health Center LLC, (ii) various personal injury, workers' compensation and similar actions against Borrower that are either covered by insurance or would not otherwise have a Material Adverse Change, (iii) an investigation being conducted by the Medicaid Fraud Division of the Massachusetts Office of the Attorney General as to Worcester Health Center LLC and Waban Health Center LLC (the "<u>Medicaid Investigation</u>"), (iv) an investigation being conducted by the Massachusetts Office of the Attorney General of Borrower's ERISA-approved pension programs, health and welfare and payroll deduction programs (the "<u>ERISA Investigation</u>") and (iv) a civil action pending against, among others, Borrower, captioned Woodmark Pharmacy of Massachusetts, LLC v. Synergy Health Centers, LLC, et al. (Case No. 1681CV00328) pending in the Superior Court of the Commonwealth of Massachusetts (Middlesex County).

3.2.    <u>Due Organization</u>.  Borrower is a limited liability company, duly formed, validly existing and in good standing under the laws of the State of Delaware.  Since the origination of the Loan, there has been no change in the ownership or control of Borrower, except as set forth in the Second Amendment, and the operating agreements, articles or by-laws, as the case may be, have not been modified or amended in any respect.

3.3.    <u>Residence</u>.  Zisha is a resident of the state of New York.  Larry is a resident of the state of Florida.

3.4.    <u>Authority</u>.  Borrower has the full power and authority and has been authorized to execute, deliver, and perform this Second Forbearance Agreement. The execution, delivery and performance of this Second Forbearance Agreement and the transactions contemplated herein have not resulted and will not result in a breach or violation of any provision of (a) Borrower's organizational documents, (b) any statute, law, rule or regulation applicable to Borrower, (c) any judgment, injunction, order, decree, writ or determination applicable to Borrower, or (d) any contract, agreement or other instrument by which Borrower may be bound or to which any of the assets of Borrower are subject.

3.5.   <u>No Breach</u>.   To the best of Borrower's knowledge, except for the Exiting Defaults, Borrower is not in breach of or in default under any Loan Document to which it is a party, and no Forbearance Default has occurred.

3.6.   <u>Truth of Loan Documents</u>.   To the best of Borrower's knowledge, all representations and warranties set forth in the Loan Documents are true and correct in all material respects as of the date hereof, except as qualified, modified or limited by this Second Forbearance Agreement.

3.7.   <u>Good Faith</u>.   As of the date of this Second Forbearance Agreement, Agent and Lender and their respective agents have acted at all times in a fair and reasonable manner, and in good faith, in connection with their administration and enforcement of the Loan Documents, their dealings with Borrower and Guarantor with respect to the Loan Documents, and their negotiations in connection with this Second Forbearance Agreement and any other transactions related to the Loan Documents and/or this Second Forbearance Agreement. The execution and delivery of this Second Forbearance Agreement by Borrower was and is its free and voluntary act and deed, without any misapprehension as to the effect thereof, and without any coercion, duress, overreaching or any other misconduct by Agent or Lender or any agent of Agent or Lender.

3.8.   <u>Legal Counsel</u>.   Borrower has had the benefit of, or the opportunity to obtain, legal counsel throughout its dealings with Agent and Lender in connection with the administration and enforcement of the Loan Documents by Agent and Lender and the execution and delivery of this Second Forbearance Agreement and the Loan Documents.

4.   <u>Representations and Warranties of Guarantor</u>.   Each Guarantor certifies, represents, warrants and acknowledges that, to the best of his knowledge, and without any investigation, each of the following is true as to himself:

4.1.   <u>No Litigation</u>.   There is no litigation, prosecution, investigation or proceeding of any nature whatsoever now pending or, to the best of his knowledge, threatened against it that would materially and adversely affect performance of any of his obligations under this Second Forbearance Agreement or the Guaranty.

4.2.   <u>Residence</u>.   Zisha is a resident of the state of New York.  Larry is a resident of the state of Florida.

4.3.   <u>Authority</u>.   Guarantor has the full power and authority and has been authorized to execute, deliver, and perform this Second Forbearance Agreement. The execution, delivery and performance of this Second Forbearance Agreement and the transactions contemplated herein have not resulted and will not result in a breach or violation of any provision of (a) any judgment, injunction, order, decree, writ or determination applicable to Guarantor or (b) any contract, agreement or other instrument by which Guarantor may be bound or to which any of the assets of Guarantor are subject.

4.4.   <u>No Breach</u>.   To the best of Guarantor's knowledge, Guarantor is not in breach of or in default under the Guaranty other than the Existing Defaults.

148367.01600/103844311v.2

4.5.   Truth of Guaranty.  To the best of Guarantor's knowledge, all representations and warranties set forth in the Guaranty are true and correct in all material respects as of the date hereof, except as qualified, modified or limited by this Second Forbearance Agreement.

4.6.   Good Faith.  As of the date of this Second Forbearance Agreement, Agent and Lender and their respective agents have acted at all times in a fair and reasonable manner, and in good faith, in connection with their administration and enforcement of the Loan Documents, their dealings with Borrower and Guarantor with respect to the Loan Documents, and their negotiations in connection with this Second Forbearance Agreement and any other transactions related to the Loan Documents and/or this Second Forbearance Agreement. The execution and delivery of this Second Forbearance Agreement by Guarantor was and is its free and voluntary act and deed, without any misapprehension as to the effect thereof, and without any coercion, duress, overreaching or any other misconduct by Agent or Lender or any agent of Agent or Lender.

4.7.   Legal Counsel.  Guarantor has had the benefit of, or the opportunity to obtain, legal counsel throughout its dealings with Agent and Lender in connection with the administration and enforcement of the Loan Documents by Agent and Lender and the execution and delivery of this Second Forbearance Agreement and the Loan Documents.

5.   Amendments to Loan Documents.

5.1.   Loan Agreement.  The Parties hereby agree, that as of the Effective Date, the Loan Agreement shall be immediately deemed amended as follows:

5.1.1.   Additional Definitions.  Section 1.1 of the Loan Agreement is amended to add the following definitions in the proper alphabetical order:

"Forbearance Fees" refers to the definition ascribed to it in the Second Forbearance Agreement.

"Forbearance Termination Event" refers to the definition ascribed to it in the Second Forbearance Agreement.

"Next Step Subordination and Collateral Assignment Agreement" means that certain Subordination and Collateral Assignment Agreement dated as of the Second Forbearance Agreement Effective Date by and between, Operator, Synergy, Next Step, Borrower and Agent.

"Second Forbearance Agreement" means that certain Second Forbearance Agreement entered into by and between Borrower, Agent, Lender and Guarantor on December 30, 2016.

"Second Forbearance Agreement Effective Date" refers to the definition ascribed to the "Effective Date" in the Second Forbearance Agreement.

9

"Second Forbearance Agreement Termination Date" refers to the definition ascribed to "Forbearance Termination Date" in the Second Forbearance Agreement.

5.1.2.   <u>Maturity Date</u>.   The definition of "Maturity Date" in Section 1.1 of the Loan Agreement is deleted and replaced with the following: "Maturity Date" means the Second Forbearance Agreement Termination Date."

5.1.3.   <u>Loan Documents</u>.   The definition of "Loan Documents" in Section 1.1 of the Loan Agreement is amended to include: "the Second Forbearance Agreement and the Next Step Subordination and Collateral Assignment Agreement."

5.1.4.   <u>Extension Options</u>.   Section 2.1(b) of the Loan Agreement is deleted and replaced with "Reserved."

5.1.5.   <u>Minimum EBITDAR</u>.   The definition of "Minimum EBITDAR" in Section 4.12(a)(ix) of the Loan Agreement is deleted and replaced with: for each month noted below, the cumulative EBITDAR calculated on a trailing three month basis shall be annualized and shall not be less than the corresponding amount noted below:

| | | |
|---|---|---|
| T-3 annualized | 3/31/2017 | $1,650,000 |
| T-3 annualized | 4/30/2017 | $1,850,000 |
| T-3 annualized | 5/31/2017 | $2,000,000 |
| T-3 annualized | 6/30/2017 | $2,200,000 |
| T-3 annualized | 7/31/2017 | $2,200,000 |
| T-3 annualized | 8/31/2017 | $2,200,000 |
| T-3 annualized | 9/30/2017 | $2,500,000 |
| T-3 annualized | 10/31/2017 | $2,700,000 |
| T-3 annualized | 11/30/2017 | $2,800,000 |
| T-3 annualized | 12/31/2017 | $3,250,000 |

5.1.6.   <u>EBITDAR</u>.   The period at the end of the definition of "EBITDAR" in Section 4.12(a)(iii) of the Loan Agreement is deleted and replaced with: "; except, however, Facility Operating Expenses shall not include (a) Forbearance Fees incurred prior to the Second Forbearance Agreement Effective Date or (b) Forbearance Fees incurred following the Second Forbearance Agreement Effective Date.

5.1.7.   <u>Events of Default</u>.   Section 8.1 of the Loan Agreement is amended to delete the "or" at the end of subsection (u), delete the period at the end of subsection (v) and replace it with "; and/or" and add the following new subsection (w):

(w)      the occurrence of a Forbearance Termination Event.

5.2.   <u>Guaranty Agreement</u>.   The Parties hereby agree that, as of the Effective Date, the Guaranty Agreement shall be immediately deemed amended and modified as follows:

148367.01600/103844311v.2

5.2.1.   Section 1.1(b) of the Guaranty Agreement shall be deleted and replaced with: "Notwithstanding anything contained herein to the contrary, (i) the guaranty by Larry under paragraph (a) of this Section, and any payments required to be made by Larry under Section 1.4, shall be limited to and shall not exceed $6,250,000 in the aggregate, and (ii) the guaranty by Zisha under paragraph (a) of this Section, and any payments required to be made by Zisha under Section 1.4, shall be limited to and shall not exceed $6,250,000 in the aggregate.

5.2.2.   Dov shall be released from his obligations under the Guaranty Agreement and the original Guaranty Agreement shall be marked "satisfied" by Agent and returned to Dov. Agent shall execute such documents that may be reasonably requested by Larry, Dov and Zisha to reflect, and which are consistent with, the foregoing provisions of Section 5.2.

6.     <u>Borrower's Covenants and Agreements</u>.  As of the Effective Date, Borrower agrees to the following covenants and agreements:

6.1.   <u>Management</u>.

6.1.1.   Prior to or on the Effective Date, Operator shall replace (or cause to be replaced) Manager with Next Step for the purpose of providing operational and clinical management services to Operator (the "<u>Next Step Engagement</u>") pursuant to a new management agreement by and between Operator, Synergy and Next Step and reasonably acceptable in form and substance to Agent (the "<u>Next Step Management Agreement</u>").  For informational purposes, as of the Effective Date, Agent and Lender have no objection to Next Step serving as Manager.

6.1.2.   Borrower, Operator, Synergy and Next Step shall execute an agreement to assign the Next Step Management Agreement and subordinate payments under and enforcement actions with respect to the Next Step Management Agreement in favor of Agent, in form and substance acceptable to Agent and Lender in their sole discretion (the "<u>Next Step Subordination and Collateral Assignment Agreement</u>").

6.1.3.   Synergy shall continue to provide Manager's back-office services to Operator through the Synergy Services Termination Date and such services shall be set forth in the Next Step Management Agreement.  At least one (1) month prior to the Synergy Services Termination Date, Operator, Next Step and Synergy shall propose a new back office provider to Agent and Lender.  The choice of a new back office provider is subject to the written approval of Agent, Lender and Next Step, which approval shall not be unreasonably withheld, conditioned or delayed.

6.1.4.   Following the Synergy Services Termination Date, if requested by Next Step, Synergy shall provide supplemental services until the earlier of the retention of a new provider or 3 additional months under a transition services agreement, which agreement shall include customary terms and conditions, including compensation-related provisions, acceptable in form and substance to Agent, Lender, and Synergy, to facilitate the onboarding of the new back-office provider.

6.1.5.   From the Effective Date through the earliest to occur of (a) the Synergy Services Termination Date and (b) the Forbearance Termination Date, Next Step and Synergy

11

shall be compensated for the management and back office services that each provides by a management fee equal to 5.75% of the gross revenue of the Facility per month (the "Management Fee").  The Management Fee shall be shared by Synergy and Next Step in portions agreed upon by and between Synergy and Next Step, provided, Synergy shall receive no more than 40% of the Management Fee.  The Management Fee shall be provided for in the Next Step Management Agreement.

6.1.6.  As of the Effective Date, Borrower and Operator shall not engage, or continue to engage, Synergy for any services other than the permitted back-office services.

6.1.7.  During the Forbearance Period, Agent and Lender may, at their discretion, freely correspond with, enter into discussions with and have contact with Next Step and its agents and employees.

6.1.8.  Operator shall deliver to Agent copies of any and all notices of termination of the Management Agreement that Operator sends to Manager within 24 hours of Operator sending any such notice to Manager, provided that the failure of Operator to timely provide such notice to Agent shall not constitute a Forbearance Default if Agent otherwise receives such notice within the applicable 24 hour period.

6.1.9.  Operator shall deliver to Agent copies of any and all requests by Manager to assign its rights and obligations under the Management Agreement within 24 hours of Operator's receipt of any such request, provided that the failure of Operator to timely provide such notice to Agent shall not constitute a Forbearance Default if Agent otherwise receives such notice within the applicable 24 hour period.

6.1.10. Subject to any confidentiality restrictions imposed by applicable law, Borrower, Operator and Synergy shall deliver to Agent copies of any notice received by any or all them from Manager of a Proposed Acquisition, as defined in the Management Agreement within 24 hours of Borrower's, Operator's or Synergy's first receipt of such notice.

6.1.11. If Borrower, Operator or Synergy exercises its right to terminate the Management Agreement pursuant to Section 7.2 of the Management Agreement, prior to the expiration of the ninety (90) calendar days' notice set forth in Section 7.2, Operator shall replace Manager with a new manager, acceptable to Agent and Lender in their sole discretion, pursuant to a new management agreement, acceptable to Agent and Lender in their sole discretion.

6.2.  Equity Infusion for Principal Curtailment.  On the Effective Date, Loan Parties shall make a single cash payment of $2,250,000 to Agent (the "Equity Infusion for Principal Curtailment").  Agent shall immediately apply the Equity Infusion for Principal Curtailment against the then outstanding principal balance of the Loans and reduce the principal balance of the Loans by the amount of the Equity Infusion for Principal Curtailment.

6.3.  Equity Infusion for Replacement Reserve.  On the Effective Date, Loan Parties shall make an additional single cash payment of $450,000 to Agent to fund the Replacement Reserve (the "Equity Infusion for Replacement Reserve").  During the Forbearance Period, Borrower may request the disbursement of funds from the Replacement Reserve for repairs

148367.01600/103844311v.2

and/or replacements in increments of not less than $20,000, and upon Agent's receipt of documents evidencing the estimated amount of such repairs and/or replacements, Agent shall promptly release the funds in the amount requested to Borrower.

6.4.     Equity Infusion for Cash Collateral Reserve.  On the Effective Date, Loan Parties shall make an additional single cash payment of $550,000 to Agent to fund the Cash Collateral Reserve (the "Equity Infusion for Cash Collateral Reserve").   At any time during the Forbearance Period, Borrower may request that Agent apply funds from the Cash Collateral Reserve against the Debt and other Loan Obligations, in which event Agent shall comply with such request.

6.5.     Principal Payments.  No amortization payments of principal on the Loan shall be due or owing during the Forbearance Period.

6.6.     Distributions.  Borrower and Operator shall not make any distributions to equity holders during the Forbearance Period; provided, however, that distributions may be made to equity holders for tax purposes only and the Management Fee shall not be considered a distribution.

6.7.     Deposit Account Control Agreement.  Prior to the Effective Date, Borrower shall execute a Control Agreement in favor of Agent for all Deposit Accounts of Borrower and Operator for which there is no existing Deposit Account Control Agreement (individually and collectively, a "DACA").

6.8.     Financial Reporting.  In addition to all financial reports required to be delivered by Borrower, Operator and Guarantor under the Loan Agreement, during the Forbearance Period, Borrower shall deliver to Agent, a current census report for each Facility every two weeks, within four (4) days after the end of each two week period on a rolling basis.

6.9.     Mortgages.  Prior to or on the Effective Date, Borrower shall execute new mortgages for each Property, in form and substance acceptable to Agent and Lender in their sole discretion (the "New Mortgages").

6.10.   Guarantors.

6.10.1. Liquidity.

6.10.1.1.     Effective Date Net Worth.  Within two (2) days prior to the Effective Date, Larry and Zisha shall provide Agent with signed personal financial statements in substantially similar format to those provided to Agent in June 2016, ("Effective Date Net Worth Statements") evidencing, as of the Effective Date, each such Guarantor's liquid net worth, on an asset-by-asset basis (the "Effective Date Net Worth").

6.10.1.2.     Post-Effective Date Net Worth.  On the dates that fall six (6) months and twelve (12) months after the Effective Date (each a "Reporting Date"), Larry and Zisha shall each provide Agent with signed personal financial statements in substantially similar format to those provided to Agent in June 2016, ("Post-Effective Date Net Worth Statements")

13

evidencing, each such Guarantor's liquid net worth, on an asset-by-asset basis (the "Post-Effective Date Net Worth").  If any Reporting Date is not a Business Day, the Reporting Date shall be the first immediately preceding Business Day.

6.10.1.3.    Net Worth Supporting Documentation.  Concurrently with the provision of each of their Effective Date Net Worth Statements and Post-Effective Date Net Worth Statements, each Guarantor shall further provide evidence in support of their statements, which shall consist of month-end account statement(s) reflecting such Guarantor's cash, savings, mutual funds or marketable securities reported on the Post-Effective Date Net Worth Statements, subject to appropriate redaction as to account numbers (collectively, "Net Worth Supporting Documentation").

6.10.1.4.    Minimum Liquidity.  During the Forbearance Period, the total value of Larry's liquid, tangible and unencumbered assets shall not fall below $6,500,000.

6.10.2.  Guarantor Action.   On the Effective Date, Agent shall dismiss the Guarantor Action without prejudice and written evidence of same shall be promptly provided to Guarantor.

6.11.    Fees.   All Forbearance Fees shall be paid by Borrower.  On the Effective Date, Agent shall pay its reasonable and documented Forbearance Fees from the remaining balance in the fee escrow account maintained by Agent, which account has a balance as of the date hereof of $218,089, and the remaining amount in the account less $25,000 (the "Fee Holdback") shall be applied to the outstanding principal balance due on the Loan.  For 90 days after the Effective Date (the "Holding Period"), the Fee Holdback shall be held in the fee escrow account to pay Agent's reasonable and documented Forbearance Fees payable during such time.  Within five (5) business days after the expiration of the Holding Period, Agent shall apply any remaining balance of the fee escrow account to the outstanding principal balance due on the Loan.

6.12.    Medicaid Investigation and ERISA Investigation.  With respect to the Medicaid Investigation and the ERISA Investigation, during the Forbearance Period, Loan Parties shall provide Agent and Lender: (a) all non-privileged information reasonably requested by Agent and/or Lender, (b) within 24 hours of receipt thereof, copies of all non-ministerial written communications and notice of all oral communications with the Massachusetts Attorney General's office or any other governmental authority, (c) within 24 hours of any Loan Party obtaining knowledge thereof, notice from any governmental authority regarding any liability or claim of liability, and (d) within 24 hours of any Loan Party obtaining knowledge thereof, any pending or threatened litigation, suit, investigation, arbitration, dispute resolution proceeding or administrative proceeding.  To the extent that the required notifications set forth above are timely provided by Next Step, in addition to or in lieu of the Loan Parties, it shall satisfy the requirements set forth in this Section.

7.  Forbearance; Remedies Upon Forbearance Termination Event.

7.1.    Provided that no Forbearance Termination Event occurs, Agent and Lender shall refrain and forbear during the Forbearance Period from exercising any and all of Agent's and/or Lender's rights and remedies under the Loan Documents and/or applicable law, including with

respect to the Existing Defaults; provided, however, that in no event shall the foregoing be deemed to limit, modify, amend, waive or otherwise affect Agent's or any Lender's rights and remedies that exist by reason of the Existing Defaults, all of which are expressly preserved and may be enforced by Agent and Lender in the event the Loan remains outstanding following the Forbearance Termination Date, except Agent and Lender agree (a) not to charge default interest on the Debt during the Forbearance Period unless a Forbearance Termination Event, other than the occurrence of the Forbearance Expiration Date, occurs, and (b) not to charge the Exit Fee, the Payoff Fee or any prepayment fee if the Debt is repaid in full on the Forbearance Termination Date.

7.2.    Immediately upon the occurrence of a Forbearance Termination Event and without notice to or demand on Loan Parties, except with respect to a Forbearance Termination Event that can be cured by the payment of money, in which case Borrower shall have the opportunity to cure such breach for the five (5) days after the date of the breach (the "Monetary Breach Cure Option"): (a) the Debt and Loan Obligations shall be immediately due and payable in full; (b) Agent's exercise of rights under the Assignment of Rents and Leases shall be reinstated and in effect as if the forbearance had not been granted herein; (c) Agent may exercise its rights and remedies under that certain Ownership Pledge, Assignment and Security Agreement dated as of March 28, 2014 by and between Synergy Health Centers LLC and the Agent; and (d) Agent shall be entitled, at its sole option and without further notice to or demand on any Borrower or Guarantor to seek any and all legal recourse against Borrower and Guarantor and pursue and enforce, either successively or concurrently, all rights and remedies set forth in the Loan Documents and the Guaranty Agreement and such other rights in law or in equity as may be available to Agent and Lender.   Notwithstanding anything herein to the contrary, Borrower may only exercise the Monetary Breach Cure Option a total of two times during the Forbearance Period.

8.    Conditions Precedent to this Second Forbearance Agreement.  It shall be a condition precedent to all obligations of Agent and Lender hereunder that all of the following conditions precedent shall have been and shall continue to be satisfied:

8.1.    Operator shall have engaged Next Step pursuant to the Next Step Management Agreement.

8.2.    Agent shall have received payment of the Equity Infusion for Principal Curtailment, in full.

8.3.    Agent shall have received payment of the Equity Infusion for Replacement Reserve, in full.

8.4.    Agent shall have received payment of the Equity Infusion for Cash Collateral Reserve, in full.

8.5.    Revolving Loan Agent, the Revolving Loan Lender and the Revolving Loan Borrower shall have entered into the Revolving Loan Second Forbearance Agreement.

15

8.6.     Agent shall have received payment of any and all Forbearance Fees of Agent or Lender submitted to Borrower for payment prior to the Effective Date.

8.7.     No Forbearance Termination Event, other than the Existing Defaults, shall have occurred.

8.8.     One hundred percent (100%) of Dov's membership interests in Borrower shall have been forfeited or otherwise distributed to one or more existing or new members of Borrower, including Next Step.

8.9.     Agent and Lender shall have received all of the following in form and substance satisfactory to Agent and Lender: (a) an original of this Second Forbearance Agreement fully executed by Borrower and Guarantor; (b) a fully executed Next Step Management Agreement and any other agreements necessary for the engagement of Next Step at the Facility; (c) a fully executed Next Step Subordination and Collateral Assignment; (d) the fully executed DACA; (e) fully executed New Mortgages; (f) evidence of the forfeiture or distribution to one or more existing or new members of Borrower of 100% of Dov's membership interests in Borrower and Operator and the resulting equity ownership of Borrower and Operator, delineated by owner and percentage; (g) the Effective Date Net Worth Statements and the Net Worth Supporting Documentation; (h) a side letter setting forth each Guarantor's address; and (i) such other documents, instruments and agreements as Agent may reasonably require and which are consistent with this Second Forbearance Agreement.

9.     <u>General Release; Waiver</u>.

9.1.     For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of Borrower and Guarantor, for themselves and their respective predecessors, heirs, successors and assigns, do hereby waive, release, acquit and forever discharge Agent, each Lender and all of Agent's and each Lender's past, present, and future directors, officers, employees, agents, attorneys, principals, shareholders, partners, representatives, joint venture partners, affiliates, parent and affiliated companies, subsidiaries, sureties and insurers, predecessors, successors, heirs, executors, administrators and assigns (collectively, the "<u>Lender's Related Persons</u>"), and each of them, of and from any and all claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description, or character, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, that any or all of Borrower and Guarantor has or asserts or may hereafter have or assert against Agent or any Lender or any of the Lender's Related Persons that in any way arise out of, are connected with or related to the Loan, the Loan Documents, the Guaranty Agreement or any of the transactions contemplated herein and therein or any earlier or other agreement or document referred to therein or any other action, claim, cause of action, demand, damage or cost of whatever nature as of the date of this Second Forbearance Agreement (collectively, the "<u>Released Claims</u>"); provided, however, that nothing herein shall discharge, waive, release or otherwise affect any claims that Borrower and/or

Guarantor may have against any of the Lender's Related Persons for any breach of its/their obligations hereunder.

9.2.    The agreements of Borrower and Guarantor set forth in this <u>Section 9</u> shall inure to the benefit of the successors, assigns, insurers, administrators, officers, agents, employees, attorneys, and representatives of Agent, Lender and the Lender's Related Persons. To the extent that the releases as set forth above run to the favor of persons or entities not signatories hereto, this Second Forbearance Agreement is hereby declared to be made in and for their respective benefits and uses.

9.3.    Without limiting the generality of <u>Section 9.1</u>, each of Borrower and Guarantor hereby represent and warrant to Agent and Lender that they have read the foregoing releases and waivers, have had the opportunity to obtain the advice of counsel regarding the releases and waivers, have agreed to the provisions of this <u>Section 9</u> with full knowledge and understanding of the significance, extent, effect and consequences of the various releases and waivers granted pursuant to this <u>Section 9</u> and of the importance to Agent and Lender of these waivers and releases, and are making the agreements, releases and waivers herein of their own volition and without any coercion or duress.

9.4.    The releases contained in this <u>Section 9</u> are not to be construed and do not constitute an admission of liability on the part of Agent or any Lender. This release shall constitute an absolute bar to any Released Claim of any kind, whether such claim is based on contract, tort, warranty, mistake or any other theory, whether legal, statutory or equitable. Each of Borrower and Guarantor specifically agree that any attempt to assert a claim barred hereby shall subject each of them to the provisions of applicable law setting forth the remedies for the bringing of groundless, frivolous or baseless claims or causes of action.

9.5.    The releases contained in this <u>Section 9</u> are not intended to, and shall not extend to, or in any way release, acquit, waive or discharge any of the rights, duties, or obligations arising from, set forth in, created by, or maintained by this Second Forbearance Agreement.

9.6.    Each of Borrower and Guarantor represent and warrant to Agent and Lender that each of Borrower and Guarantor alone are the owners of the Released Claims and that they have not heretofore hypothecated, pledged, encumbered, assigned or transferred, nor purported to hypothecate, pledge, encumber, assign or transfer, to any person or entity any of the Released Claims.  Each of Borrower and Guarantor further agree to indemnify, protect, defend and hold Agent and Lender harmless from and against any and all claims, demands, losses, liabilities, damages, costs and expenses (including attorneys' fees and court costs) incurred by Agent and/or any Lender as the result of any person or entity asserting any such hypothecation, pledge, encumbering, assignment or transfer of any of the Released Claims.

10.    <u>Miscellaneous</u>.

10.1.    <u>Integration; Modifications</u>.  This Second Forbearance Agreement contains the entire agreement between Borrower, Guarantor, Agent and Lender with respect to the subject matter hereof and, except to the extent that it modifies and amends the Loan Documents, supersedes all prior agreements and understandings with respect thereto.  This Second

17

Forbearance Agreement may not be changed, modified, or supplemented except by a writing signed by the Party against whom enforcement of such change, modification or supplement is sought.

10.2.   <u>Counterparts</u>.   This Second Forbearance Agreement may be executed in counterparts, each of which shall be deemed an original (including copies sent by facsimile transmission or electronically), but all of which together shall constitute but one and the same instrument.

10.3.   <u>Full Force and Effect of Loan Documents; Conflicts</u>.   Except as specifically set forth herein, the Loan Documents are not amended or modified in any respect, and each of them remains in full force and effect.  In the event of any conflict or inconsistency between the terms and conditions of this Second Forbearance Agreement and the other Loan Documents, the terms and conditions of this Second Forbearance Agreement shall control and prevail.

10.4.   <u>Attorneys' Fees</u>.   In any legal action, arbitration, or other proceeding brought to enforce or interpret the terms of this Second Forbearance Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and any other costs incurred in that proceeding in addition to any other relief to which it is entitled (including bankruptcy and appellate proceedings).  The provisions of this <u>Section 10.4</u> constitute a distinct and severable agreement from the contractual rights created by this Second Forbearance Agreement. In the event of a judgment against one party concerning any aspect of this Second Forbearance Agreement, the right to recover post-judgment attorneys' fees incurred in enforcing the judgment shall not be merged into and extinguished by any money judgment.

10.5.   <u>Severability</u>. If any provision of this Second Forbearance Agreement is found invalid, illegal or unenforceable, such provision shall be severed from this Second Forbearance Agreement, and the validity, legality and enforceability of the remaining provisions shall not be impaired or affected thereby.

10.6.   <u>Time of the Essence</u>.  Time is of the essence in the performance of each provision and satisfaction of each condition hereof.

10.7.   <u>No Waiver</u>.  No failure or delay on the part of Agent or any Lender in the exercise of any power, right or remedy, and no course of dealing between Borrower and/or Guarantor and Agent or any Lender shall operate as a waiver of such power, right or remedy, nor shall any single or partial exercise of any power, right or remedy preclude other or further exercise thereof or the exercise of any other power, right or remedy.  Without limiting the generality of the foregoing, Agent's and each Lender's forbearance hereunder shall not constitute a waiver of any succeeding breach or default by Borrower or Guarantor.

10.8.   <u>Governing Law</u>. This Second Forbearance Agreement shall be governed by and interpreted in accordance with the laws of the State of Maryland without regard to rules concerning conflicts of laws, except to the extent federal law is applicable to Agent.

10.9.   <u>Further Assurances</u>.  Borrower and Guarantor will, upon Agent's written request, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, to the

Agent any and all documents, instruments and agreements as may be reasonably necessary to effectuate the intent and purpose of this Second Forbearance Agreement and the other Loan Documents.

10.10.  <u>Binding Effect</u>.  This Second Forbearance Agreement shall be binding on and shall inure to the benefit of the parties and their respective heirs, representatives, successors and permitted assigns.

10.11.  <u>Interpretation</u>.  This Second Forbearance Agreement is the result of negotiations between, and has been reviewed by counsel to, Borrower, Guarantor, Agent and Lender, and is the product of all of the parties.  Accordingly, this Second Forbearance Agreement shall not be construed against Agent merely because of its involvement in the preparation of this Second Forbearance Agreement.

10.12.  <u>Notices</u>.  Any notice, demand, request, legal process or other communication that any party hereto may be required or may desire to give hereunder or under the Loan Documents shall be in writing and shall be deemed to have been properly given (a) if hand delivered, when delivered, (b) if mailed by United States mail, certified or registered, postage prepaid, two Business Days after mailing, and (c) if by Federal Express or other reliable overnight courier service, on the next business day after delivered to such courier service.

| | |
|---|---|
| Agent and Lender: | Capital Funding, LLC<br>1422 Clarkview Road<br>Baltimore, Maryland 21209<br>Attention: Account Manager – Synergy |
| With a courtesy copy to: | Katten Muchin Rosenman LLP<br>525 W. Monroe St.<br>Chicago, Illinois 60661<br>Attention: Kenneth J. Ottaviano<br>Kenneth.Ottaviano@kattenlaw.com |
| Borrower and/or Guarantor: | c/o Synergy Health Centers LLC<br>2363 Lakewood Road, Suite 200<br>Toms River, NJ 08755<br>Attention: Zisha Lipschutz<br>Zisha@newenglandhc.com |
| With a courtesy copy to: | Blank Rome LLP<br>One Logan Square<br>130 North 18th Street<br>Philadelphia, Pennsylvania 19103-6998<br>Attention: Leon R. Barson<br>LBarson@BlankRome.com |

19

Any notice to any one of Borrower or Guarantor shall be deemed notice to all of them.

    10.13. <u>No Third Party Beneficiary</u>.   Nothing contained in this Second Forbearance Agreement is intended, nor shall it be construed or deemed, to confer any rights, powers, or privileges on any person or entity not a party or a permitted successor or assign of a party or any Lender's Related Person.

    10.14. <u>No Reliance Upon Other Representations; Independent Counsel</u>. The parties acknowledge that they have not executed this Second Forbearance Agreement in reliance upon any promises, representations, warranties or statements not set forth in writing herein, that they are not acting under any misrepresentation or misapprehension as to this Second Forbearance Agreement's legal effect, and that this Second Forbearance Agreement has not been executed under any kind of duress, intimidation, coercion or compulsion. The parties further acknowledge and represent that that they (a) have been represented by legal counsel in connection with the negotiation of the terms of this Second Forbearance Agreement, (b) read this Second Forbearance Agreement carefully prior to signing it, and (c) understand its contents.

*(signature page to immediately follow)*

148367.01600/103844311v.2

IN WITNESS WHEREOF, the Parties hereto have executed this Second Forbearance Agreement as of the year and date first set forth above.

**Borrower:**

22 Maple Street, LLC

By: _____
Name: _____ Avi Lipschutz _____
Its: _____ Manager _____

25 Oriol Drive, LLC

By: _____
Name: _____ Avi Lipschutz _____
Its: _____ Manager _____

59 Coolidge Road, LLC

By: _____
Name: _____ Avi Lipschutz _____
Its: _____ Manager _____

20 Kinmonth Road, LLC

By: _____
Name: _____ Avi Lipschutz _____
Its: _____ Manager _____

State of New Jersey                    )
County of Ocean                        )

On Dec. 29 , 2016, before me the undersigned notary public in and for said state, personally appeared Avi "Zisha" Lipschutz, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

**NECHOMA B. PRESS**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires Dec. 15, 2020**

**Guarantor:**

Dov Newmark, solely as to Sections 4.2.2, 8.8,
9 and 10

_____

State of New Jersey                              )
County of Ocean                                  )

On Dec. 29 , 2016, before me the undersigned notary public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

NECHOMA B. PRESS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Dec. 15, 2020

Guarantor:

Avi "Zisha" Lipschutz

State of New Jersey )
County of Ocean )

On Dec. 29, 2016, before me the undersigned notary public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

**NECHOMA B. PRESS**
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Dec. 15, 2020

**Guarantor:**

Larry Lipschutz

State of _Florida_ )
County of _Miami Dade_ )

On _12/29_ , 2016, before me the undersigned notary public in and for said state, personally appeared _Larry Lipschutz_ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

Maillim Rodriguez
Notary Public
State of Florida
My Commission Expires 05/08/2017
Commission No. FF 16548

Signature Page to Second Forbearance Agreement – Term Loan
148367.01600/103844311v.2

**Agent:**

Capital Funding, LLC,
a Maryland limited liability company

By: _Deborah L. Spangenberg_
Name: _Deborah A. Spangenberg_
Its: _President_


State of _Maryland_ )
County of _Baltimore_ )

On _Dec 21_, 2016, before me the undersigned notary public in and for said state, personally appeared _Deborah Spangenberg_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

_Laura Wuepiger_
My Commission Expires June 9, 2019

**Lender:**

Capital Funding, LLC,
a Maryland limited liability company

By: _Deborah A. Spangenberg_
Name: Deborah A. Spangenberg
Its: President

State of _MAryland_                              )
County of _Baltimore_                            )

On _Dec. 21_, 2016, before me the undersigned notary public in and for said state, personally appeared _Deborah Spangenberg_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

_Laura Wuipigler_

My Commission Expires June 9, 2019

**Lender:**

MVB Bank, Inc.,
a West Virginia banking corporation

By: _John Schirr_
Name: ___John Schirring___
Its: ___Chief Commercial Lending Officer___

State of _West Virginia_ )
County of _Harrison_ )

On _Dec. 21_, 2016, before me the undersigned notary public in and for said state, personally appeared ___John Schirripa___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

Official Seal
Notary Public, State of West Virginia
Diana L. Kinder
17 Cypress Dr.
White Hall , WV 26554
My Commission Expires May 21, 2018

_Diana L Kinder_

**Lender:**

Congressional Bank,
a Maryland chartered bank

By: _____
Name: _____
        James H. Peterson
Its: _____
       Authorized Signatory

State of _Maryland_             )
County of _Montgomery_      )

On _12/22_, 2016, before me the undersigned notary public in and for said state, personally appeared _James Peterson_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

```
MICHELLE E. AHEARN
Notary Public-Maryland
Montgomery County
My Commission Expires
April 01, 2020
```

_Michelle Ahearn_
12/22/16

Signature Page to Second Forbearance Agreement – Term Loan
148367.01600/103844311v.2

**Lender:**

BANCALLIANCE, Inc.,
a Maryland corporation

by AP Commercial LLC,
its attorney-in-fact

By: _____
Name: John Gray
Its: Executive Vice President

State of _____Maryland_____ )
County of _____Montgomery_____ )

On 21 Dec, 2016, before me the undersigned notary public in and for said state, personally appeared _____John Gray_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

CAROL D. BAKER
NOTARY PUBLIC
MONTGOMERY COUNTY
MARYLAND
MY COMMISSION EXPIRES SEPT. 25, 2017

**Lender:**

AP MA Funding LLC,
a Delaware limited liability company

By: _____

Name: John Gray

Its: Executive Vice President

State of _____Maryland_____     )
County of ___Montgomery_____     )

On _21 Dec_, 2016, before me the undersigned notary public in and for said state, personally appeared _____John Gray_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

**CAROL D. BAKER**
NOTARY PUBLIC
MONTGOMERY COUNTY
MARYLAND
MY COMMISSION EXPIRES SEPT. 25, 2017