**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

|  |  |  |
|---|---|---|
| **CAPITAL FUNDING, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. CCB-18-0215** |
| | ) | |
| **AVI "ZISHA" LIPSCHUTZ, ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANT "ZISHA" LIPSCHUTZ'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Avi "Zisha" Lipschutz ("defendant Zisha"), by and through his undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby submits his Opposition to Plaintiff, Capital Funding, LLC's ("Plaintiff's") Motion for Summary Judgment ("Motion"). In support of his Opposition, defendant Zisha states as follows:

## INTRODUCTION

The Motion should be denied because it fails to present any legitimate basis upon which this Court may enter summary judgment in Plaintiff's favor. First, and as a threshold matter, Plaintiff's entire lawsuit is barred under the doctrine of *res judicata*. In 2016, Plaintiff initiated an action in this Court identical to this one in all material respects, claiming that defendant Zisha breached the subject guarantee and seeking to recover from him amounts owed thereunder. Plaintiff voluntarily dismissed that lawsuit *with prejudice*, and under applicable law, such dismissal unequivocally precludes Plaintiff from maintaining this action.

Second, Plaintiff's contention that it may enforce the guarantee against defendant Zisha regardless of its misconduct in connection with the collateral sale is inconsistent with the governing documents and legal precedent. Under the very terms of the guarantee, defendant Zisha's obligations thereunder are "released, diminished, impaired, reduced or adversely affected by" Plaintiff's "willful misconduct . . . in the sale of . . . such collateral." Moreover, under governing Maryland law, defendant Zisha is excused from performance under the guarantee given that Plaintiff has breached its duty of good faith and fair dealing implied in the guarantee.

Third, Plaintiff's contention that the doctrines of *res judicata* and collateral estoppel preclude defendant Zisha from asserting "sale-related" affirmative defenses in this case is flawed for a number of reasons. As a preliminary matter, those doctrines do not apply here, given that defendant Zisha did not have a "full and fair opportunity" to litigate his sale related defenses in the prior bankruptcy action. Moreover, collateral estoppel is inapplicable here for the additional reason that the only issue that was "actually determined" in the bankruptcy court, and the only finding that was "critical and necessary" to the bankruptcy court's ruling was that the Stalking Horse bidder was a "good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code." The bankruptcy court made <u>no</u> determinations regarding the conduct of Plaintiff, and even if it would have, such determinations would be neither "critical" or "necessary" to its ruling. Likewise, *res judicata* is inapplicable here for the additional reason that the causes of action in this instant case and the bankruptcy case are not "identical." In the bankruptcy action, the only cause of action was the validity of the sale which, at least in part, turned on the definition of "good faith" under "Section 363(m) of the Bankruptcy Code."  In this case, the claims before this Court are whether Plaintiff engaged in "willful misconduct" or failed to act in "good faith" under its broader common law meaning.

Fourth, notwithstanding Plaintiff's contention to the contrary, defendant Zisha's affirmative defenses are not "boilerplate." Each one is firmly rooted in either Plaintiff's misconduct relating to the sale of the collateral, the unambiguous language of the guarantee or Plaintiff's own pleadings.

Finally, and in the alternative, should this Court find that defendant Zisha has failed to raise a genuine dispute of material fact with respect to any of the sale-related defenses, the Motion should still be denied as premature. Defendant Zisha has simply not had an adequate opportunity to conduct discovery regarding these defenses. For these reasons, as will be explained more fully below, the Motion should be denied.

## STATEMENT OF FACTS

### *The Parties, the Agreements, and the Collateral*

On or about March 4, 2014, plaintiff issued a loan to 22 Maple Street, LLC, 25 Oriol Drive, LLC, 59 Coolidge Road, LLC, and 20 Kinmonth Road, LLC ("borrower entities") in connection with the purchase of skilled nursing facilities in Massachusetts. (ECF No. 13-2 at ¶ 3, Aff. of Zisha Lipschutz.) The borrower entities are owned by Synergy Health Centers, LLC ("Synergy"). (*Id.*) The three primary owners of Synergy are defendant Zisha, defendant Larry Lipschutz, and the Brach family. (*Id.* at ¶ 4.)[1] The subject loan is secured by property located at 22 Maple Street, Amesbury, Massachusetts, 25 Oriol Drive, Worcester Massachusetts and 59 Coolidge Road, Watertown, Massachusetts (collectively, the "Properties"), and is guaranteed by defendant Zisha and Defendant Larry Lipschutz pursuant to a guarantee agreement ("Guaranty") between the

---

[1] The four skilled nursing facilities are operated by Waban Health Center, LLC, Merrimack Valley Health Center, LLC, Watertown Health Center, LLC, and Worcester Health Center, LLC. (ECF No. 13-2 at ¶ 7, ) The operator entities also are owned by Synergy. (Id. at ¶ 7) The operator entities have been placed in receivership by the United States District Court for the District of Massachusetts, Case No. 1:18-cv-10172 (*Id.*).

parties. A true and correct copy of the Guaranty is attached to the Complaint in this action as Exhibit B. (ECF No. 1-5).

The Guaranty was later amended pursuant to a Second Forbearance Agreement between the parties so as to limit defendant Zisha's maximum exposure under the Guaranty to $6,250,000. A true and correct copy of the Second Forbearance Agreement is attached to the Complaint in this action as Exhibit C. (ECF No. 1-6).

**Plaintiff Initiates 2016 Lawsuit Against Defendant Zisha in this Court for Amounts Owed under the Guaranty, Voluntarily Dismisses that Case *With Prejudice*, and Then Initiates the Instant Identical Action.**

On July 5, 2016, Plaintiff filed a complaint for breach of the Guaranty against defendant Zisha, Larry Lipschutz, and a Dov Newmark in this Court under case number 1:16-cv-02485-ELH (the "2016 Action"). A true and correct copy of the Complaint filed in that action is attached hereto as **Exhibit 1**. In the Complaint, Plaintiff sought to recover from defendant Zisha an "amount no less than $33,839,456.09." Exhibit 1, ¶ 32. In connection with the negotiations regarding the Second Forbearance Agreement, Plaintiff drafted an Order it which it voluntarily dismissed the 2016 Action *with prejudice* on January 5, 2017. A true and correct copy of the notice of the dismissal with prejudice is attached hereto as **Exhibit 2**.

Despite having dismissed the 2016 Action with prejudice, Plaintiff initiated this action against defendant Zisha on January 23, 2018, again alleging breach of the Guaranty and again seeking to collect amounts allegedly owed under the Guaranty (as amended). *See generally* ECF No. 1 (claiming breach of the Guaranty and seeking a money judgment against each defendant in the amount of $6,250,000). Defendants filed an Answer to the Complaint on February 23, 2018, which included a number of affirmative defenses, including *res judicata*. (ECF No. 6).

*__Plaintiff and Borrower Entities Plot to Sell the Properties to an Inside Purchaser on an Inexplicable 'Expedited' Basis and at a Price Well-Below Market Value.__*

On February 14, 2018, the borrower entities filed for Chapter 11 protection in the United States Bankruptcy Court for the Eastern District of New York, Case No. 1:18-40816 ("bankruptcy action"). (ECF No. 13-2, at ¶ 5). The resolution authorizing the petitions is signed by Zigmund Brach as Manager and defendant Larry Lipshutz. (*See* **Exhibit 3,** a true and correct copy of defendant Zisha's Objection to Motion for Authority to Prosecute filed in the bankruptcy action, ¶ 2; **Exhibit 4**, Declaration of Zisha Lipschutz, ¶ 2). Defendant Zisha's consent was neither sought nor given to the Chapter 11 filings. (Exh. 3, ¶ 5).

On March 22, 2018, Plaintiff filed a motion to lift the automatic stay to foreclose on the Properties under state law and neglected to serve defendant Zisha with the motion. (*Id.* at ¶10). On April 20, 2018, the borrowing entities filed an opposition (the "Opposition") to plaintiff's motion to lift the stay, a true and correct copy of which is attached hereto as **Exhibit 5**. In the Opposition, which also was not served on defendant Zisha, (*see* Exh. 3 at ¶ 30), the borrowing entities announced that "the Lenders now concur that Chapter 11," as opposed to "a state law foreclosure," is "the best vehicle in which to move a sale process forward." (Exh. 5, ¶ 4). The Opposition further reports that "Debtors are now led by the Brach Family, which has the financial means to provide interim financing to cover potential operating shortfalls," and that "the Brach Family is well positioned to lead a new buy-out group to serve as a stalking horse buyer in each of the cases pursuant to a transparent and competitive bidding process." (*Id.*) The Opposition further represented that they had "a defined goal to address the mortgage debt through a sale and restructuring process in relatively short order," and paid lip service to the notion that "due care must be given to developing the best possible sale framework that protects multiple interests and

constituents, while giving the Lenders a fair opportunity to realize competitive market value." (*Id.*, ¶¶ 2, 3).

Despite these statements, at no time during the pendency of the bankruptcy action did plaintiff or borrowing entities retain a broker to locate an arms-length stalking horse bidder. (Exh. 3, ¶ 12). Instead, and first on June 22, 2018, borrowing entities Maple, Oriol and Coolidge, filed a motion ("Sale Motion") seeking, amongst other things, approval of "bid procedures and certain protections" for an investor group ("Stalking Horse") and the approval of the sale of their Properties to the Stalking Horse pursuant to the bid procedures. A true and correct copy of the Sale Motion is attached hereto as **Exhibit 6**. The Stalking Horse was owned at least in part and led by an insider, the Brach Family ("Inside Purchasers"). (Exh 3, ¶ 11). Since the Insider Purchasers did not have to contend with competing stalking horse offers, they wrote their own terms. (*See id.*). Crucially, the Properties were valued at no less than $27,000,000, (*see* Exh. 3, ¶ 36), and yet, the Sale Motion sought to sell the Properties to the Stalking Horse for a mere $23,000,000. (*See* Exh. 6, ¶ 9). Moreover, the Sale Motion also indicated that the Stalking Horse would be awarded (a) $1,000,000 for alleged operating deficiencies it purportedly subsidized, and an additional (b) $460,000 as a break-up fee. (*Id.*)

The Sale Motion further provided that an auction of Maple's, Oriol's and Coolidge's Properties (the "Auction") would take place on August 31, 2018, and the bid proposed in the Motion would serve as the opening bid. (Exh. 6, ¶ 10). The Sale Motion also represented that the proposed sale was authorized under Bankruptcy Code 363(b). (*See id.*, ¶ 29).

As with the filings in connection with the motion to lift the automatic stay, defendant Zisha was not served or properly notified of the Sale Motion. (Exh. 3, ¶ 30).

After filing the Sale Motion on June 22, 2018, borrowing entities moved to shorten time for a response and obtained a hearing on the motion a few days later on June 28, 2018. An order was entered on July 6, 2018, granting the Sale Motion and, amongst other things, scheduling the bid deadline for August 28, 2018 and the Auction for September 7, 2018. A true and correct copy of the July 6, 2018 Order is attached hereto as **Exhibit 7**. It was not until August 2, 2018 that the Insider Purchasers finally made a motion for a broker to solicit bids for the Properties. A true and correct copy of the August 2, 2018 Motion is attached hereto as **Exhibit 8**. The motion was approved by the Court, and the broker started work on August 14, 2018 to solicit bids by August 28, which are among the slowest weeks in one of the slowest months for sales. (*See* Exh 3, ¶ 22).

On September 7, 2018, borrowing entities Maple, Oriol and Coolidge filed a Notice of Auction Results, a true and correct copy of which is attached hereto as **Exhibit 9**. In the Notice, said borrowing entities informed the Court that "Debtors and the Lenders have deemed the stalking horse bid as the winning bidder, and intend to proceed to close under the stalking horse contract" because "the offer of the stalking horse bidder was deemed the highest and best bid after no further bid [was] made in connection with the auction," and "no further bids were received . . ." (Exh. 9).

The first and only notice served on defendant Zisha in the bankruptcy action was a "Notice of Auction and Sale" in early to mid-July 2018, more than six months after the bankruptcy action was filed. (*See* Exh. 3, ¶ 30). Notably, defendant Zisha had no reason to assume he was not receiving filings in the bankruptcy action as he was receiving filing notices in a related Chapter 11 bankruptcy case in the same court, *In Re 90 West Street, LLC*, Case No. 1:18-bk-40515. (*See id.* at ¶ 9).

On September 9, 2018, defendant Zisha filed an objection ("Objection") to the Sale Motion, pointing to the various improprieties on the part of the borrowing entities, including their

failure to give defendants notice and opportunity to be heard on any matter, failing to hire a broker before selecting a stalking horse bid, creating an artificial emergency for approval of sale procedures, awarding themselves a $1,460,000 break-up fee, and continuing to avoid professional marketing until two weeks before the deadline for bidding during one of the slowest sales periods of the year. (*See generally* Exh. 3).

A hearing was held regarding the Sale Motion on September 12, 2018. Defendant Zisha had no opportunity to conduct any written discovery regarding Plaintiff's conduct in connection with the sale, nor was he able to examine any witnesses except for Steven Thomes of Blueprint Healthcare Advisors, the broker for the sale. (*See* Declaration of Ari Scott Casper, **Exhibit 10**, ¶ 2).

Over defendant Zisha's Objection, the District Court for the Eastern District of New York approved the sale to the Stalking Horse on September 21, 2018. Defendant Zisha timely filed notice of appeal in the bankruptcy action on September 25, 2018. A true and correct copy of the Notice of Appeal, which includes a copy of the September 21, 2018 Order, is attached hereto as **Exhibit 11**.

### *This Case Has Been Stayed Twice to Avoid Duplicative Litigation, Leaving the Parties Still at the Initial Stages of Discovery and Far From Trial.*

The initial scheduling order is this case was issued on February 23, 2018. (*See* ECF No. 7). It provided April 9, 2018 as the deadline for joinder of parties and amending pleadings; July 9, 2018 as the discovery deadline and deadline for submitting a status report; July 16, 2018 as the deadline for requests for admissions; and August 7, 2018 as the deadline for dispositive pre-trial motions. (*See id.*). On April 11, 2018, defendants filed a Motion to Stay, informing the Court of the bankruptcy action and requesting a sixty day stay of this case to avoid duplicative litigation

and unnecessary expense. (ECF No. 13.) Plaintiff opposed the Motion to Stay but this Court granted it on June 12, 2018. (ECF No. 17).

On June 18, 2018, and after the expiration of the sixty day stay, the parties filed a Joint Motion to Amend the Scheduling Order, asking that this Court extend: (1) the discovery deadline and deadline for submitting a status report to September 7, 2018; (2) the deadline for requests for admission to September 14, 2018; and (3) the deadline for dispositive pre-trial motions to October 9, 2018. (ECF No. 18).

On August 7, 2018, the parties filed a _**Joint**_ Motion to Stay Litigation, requesting this Court to stay this case until September 7, 2018, the date of the Auction, so as to avoid duplicative litigation. (ECF No. 19). The parties further requested that this Court extend: (a) the discovery deadline and deadline for submitting a status report to October 15, 2018; (b) the deadline for requests for admission to October 29, 2018; and (c) the deadline for dispositive pre-trial motions to November 16, 2018. (*See id.*). This Court granted the Joint Motion to Stay Litigation on August 10, 2018. (ECF No. 20).

On October 15, 2018, the parties submitted a joint status report to this Court. (*See* ECF No. 26). The Status Report reflects that very little discovery has been conducted thus far. No depositions have been taken, and only Plaintiff has propounded written discovery, some of which was untimely served. (*See id.*). Additionally, Plaintiff contends that the written discovery responses it received from defendant Zisha are "insufficient and inadequate." (*See Id.*) No trial date has been set for this case.

### _Plaintiff Attempts to Prevent Defendant Zisha From Asserting Additional Defenses in This Action Based on Plaintiff's Recently Discovered Misconduct._

In light of the new developments in this case, including Plaintiff's misconduct in connection with the Auction, defendant Zisha filed a Motion to Modify the Scheduling Order and

For Leave to Amend his Answer on October 25, 2018 ("Motion for Leave") (ECF No. 29). The Motion for Leave seeks leave to modify the scheduling order in this case by extending the discovery deadline, and correspondingly, the deadline for dispositive pre-trial motions, the deadline for moving for joinder of additional parties and amending pleadings and the deadline for requests for admissions, as follows:

| Event | Existing Deadline | Proposed Deadline |
| --- | --- | --- |
| Moving for Joinder of Additional Parties Amendment of Pleadings | April 9, 2018 | December 3, 2018 |
| Discovery | October, 15, 2018 | January 14, 2019 |
| Requests for Admissions | October 29, 2018 | January 29, 2019 |
| Dispositive Pretrial Motions | November 16, 2018 | February 14, 2019 |

The Motion for Leave also proposes additional affirmative defenses arising from Plaintiff's misconduct in the connection with the sale, and thus seeks leave to file the Amended Answer attached to that Motion as Exhibit 2. Plaintiff filed an Opposition to the Motion for Leave on November 8, 2018, arguing, primarily, that defendant Zisha's proposed amendments are barred under the doctrines of *res judicata* and collateral estoppel. (ECF No. 33).

Plaintiff filed the Motion on November 16, 2018. (ECF No. 34). The instant filing is defendant Zisha's Opposition to the Motion, and contemporaneously herewith, defendant Zisha also files a Reply in support of his Motion to Leave.

## LEGAL STANDARD

Summary Judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry for a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-51 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255.

Once a motion for summary judgment is properly made and supported, the party opposing summary judgment has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Upon review of the facts and law in this matter it is evident that this Court must deny Plaintiff's Motion for Summary Judgment.

## LEGAL ARGUMENT

### I.  Plaintiff's Bad Faith and Willful Misconduct in Connection with the Sale Excuse Defendant Zisha from Performance Under the Guaranty.

Plaintiff's opening argument in the Motion demonstrates that it misses *the whole point* of the proposed affirmative defenses.  Plaintiff argues that the Guaranty should be enforceable against defendant Zisha regardless of its misconduct relating to the sale of the Properties, because: 1) under applicable law it may pursue the guarantor without seeking a sale of the collateral altogether; 2) the sale will purportedly yield no more than $17 million, and therefore "even if the Bankruptcy Court sale closes . . . there will still be a deficiency owed to the Agent of over $16 million, which is more than the Defendants' combined obligations under the Guaranty ($6.25 million each)." Motion, p. 13.

But these arguments ignore the fact that Plaintiff's willful misconduct and bad faith in connection with the sale excuses defendant Zisha from performing (in whole or in part) under the Guaranty. First, Article II of the Guaranty provides, in pertinent part, as follows:

Guarantor's obligations under this Guaranty shall not be released, diminished, impaired reduced or adversely affected by any of the following . . .

*      *      *

2.8.  <u>Care and Diligence</u>. The failure (other than due to gross negligence or *willful misconduct*) of Lenders or Agent or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, *sale* or other handling or treatment of all or any part of such collateral property or security . . .

ECF No. 1-5, Article II, Section 2.8 (emphasis supplied).  Under these provisions, should this Court find that Plaintiff's behavior in connection with the sale of the Properties amounts to "willful misconduct" – as defendant Zisha claims it does – then the Guaranty itself "release[s], diminishe[s], impair[s], reduce[s] or adversely affect[s]" defendant Zisha's obligations thereunder.

Furthermore, should this Court find, as averred in the proposed amendments, that Plaintiff's misconduct amounts to a breach of the implied duty of good faith and fair dealing, this too would excuse defendant's performance (in whole or in part) under the Guaranty. This is because, under well-established Maryland law, "a material breach by one party to a contract excuses the other party from performance." *Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc.*, 694 F. Supp. 2d 449, 456 (D. Md. 2010), aff'd, 442 Fed. Appx. 66, 2011 WL 3421515 (4th Cir. 2011) (applying Maryland law). *See also Bollech v. Charles County, Maryland*, 166 F.Supp.2d 443, 458 (D.Md.2001) ( "[A] material failure of performance by one party 'prevents performance [of the other party's remaining duties] from becoming due, at least temporarily, and it discharges those duties if it has not been cured during the time in which performance can occur.") (citation omitted). Accordingly, Plaintiff's contention that it may enforce the Guaranty against defendant Zisha regardless of its misconduct during the sale is simply wrong.

Additionally, the assertion that the sale will earn no more than $17 million - even if true - is completely irrelevant, and to the extent it is relevant actually supports defendant Zisha's

12

defenses. The whole point of defendant Zisha's Objection, Motion for Leave and the proposed defenses is that the misconduct precipitating and surrounding the sale caused the Properties to be sold for such a below-market price. Had the Properties been sold under proper and lawful circumstances, the uncontroverted evidence suggests that they would have sold for $27 million, or potentially more as discovery will establish, *see* Exh. 3, ¶ 36, leaving a deficiency of less than $5 million, *at most*. In short, Plaintiff's misconduct relating to the sale caused an unnecessarily large deficiency for which defendant Zisha should not be held responsible.

## II.     Neither *Res Judicata* nor Collateral Estoppel Apply to Bar any of the Defenses Raised by Defendant Zisha.

In the Motion, Plaintiff claims that defendant Zisha is procedurally barred from asserting affirmative defenses relating to the sale under the doctrines of *res judicata* and collateral estoppel. To support this contention, Plaintiff repeatedly states, in a conclusory fashion, that "there is no dispute that . . . that the Sale Order addressed the exact same issues Zisha seeks to raise herein." Motion at p. 15.   As a preliminary matter, Plaintiff, as "[t]he party asserting *res judicata* or collateral estoppel," has "the burden of proving all of the requisites of its application." *In re Jones*, 209 B.R. 380, 383–84 (Bankr. E.D. Va. 1997). *See also United States v. Davis*, 460 F.2d 792, 795 (4th Cir. 1972) ("The burden is on the party seeking to use another judgment to prove the elements of collateral estoppel.").   As explained below, Plaintiff has woefully failed to meet this burden, as its assertion that the issues addressed by the Sale Order is the exact same as those addressed by the proposed affirmative defenses is demonstrably false. Indeed, Plaintiff's argument should be rejected as an unlawful attempt to exploit the Sale Order in order to prevent defendant Zisha from having *any* opportunity (let alone a "full and fair" one) to assert its defenses to the instant action.

### i.) *The Doctrines of Collateral Estoppel and Res Judicata under Fourth Circuit Law.*

Under Fourth Circuit law, collateral estoppel or issue preclusion applies when the following five criteria are met:

(1) The issue sought to be precluded is identical to one previously litigated;

(2) The issue was *actually determined* in the prior proceeding;

(3) Determination of the issue was a *critical and necessary* part of the decision in the prior proceeding;

(4) The prior judgment is final and valid; and

(5) The party against whom collateral estoppel is asserted had *a full and fair opportunity* to litigate the issue in the previous forum."

*Allstate Ins. Co. v. Cherry*, CIV.A. ELH-11-2898, 2012 WL 1425158, at *8 (D. Md. Apr. 23, 2012) (internal citations and quotation marks omitted) (emphasis added).

The doctrine of *res judicata* or claim preclusion applies under Fourth Circuit law when there is: (i) a final judgment on the merits in a prior suit; (ii) an identity of the cause of action in both the earlier and the later suit; and (iii) an identity of parties or their privies in the two suits. *Providence Hall Assoc. LP v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016) (citing *Pueschel v. United States*, 369 F.3d 345, 354-55 (4th Cir. 2004). "No simple test exists to determine whether causes of action are 'identical' for claim preclusion purposes. . ." *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999). This is especially true, where, as here, the prior case was a bankruptcy proceeding. *See e.g., In re Adelphia Recovery Tr.*, 634 F.3d 678 (2d Cir. 2011) ("Because a bankruptcy case is fundamentally different from the typical civil action, comparison of a bankruptcy proceeding with another proceeding is not susceptible to the standard *res judicata* analysis. . . ."); *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157–58 (2nd Cir. 2017) ("the standard *res judicata* analysis can be an awkward fit when applied to bankruptcy proceedings . . . Unlike a typical lawsuit, where one party brings an action against another, a

bankruptcy proceeding provides a forum for multiple parties—debtors, creditors, bidders, etc.—to sort out how to allocate, among other things, a debtor's assets. In other words, a bankruptcy court's foremost concern is maximizing the value of the debtor's estate."); *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1299 (11th Cir. 2001) ("different res judicata considerations may come into play when the first case is a bankruptcy proceeding").

Accordingly, while Courts in the Fourth Circuit often apply the "transactional" test to determine identity of causes of action, "each case must be determined separately within the conceptual framework of the [res judicata] doctrine" and "the court must balance the interests of the defendant and of the courts in bringing litigation to a close against the interest of the plaintiff in not being denied the right to prosecute a valid claim. *Id.* [2]

Critically, *res judicata*, like collateral estoppel, "only appl[ies] where the party against whom the bar . . . is asserted enjoyed a full and fair opportunity to litigate the cause of action in the earlier proceeding." *Bradley v. Artery Custom Homes, LLC*, CIV. PJM 08-539, 2009 WL 6560200, at *4 (D. Md. Jan. 29, 2009), aff'd, 328 Fed. Appx. 873, 2009 WL 2233556 (4th Cir. 2009). *See also Baltimore Luggage Co. v. Samsonite Corp.*, 1992 WL 296368 (4th Cir. Oct.16, 1992) ("[F]airness considerations, such as whether the parties were in fact afforded 'a full and fair opportunity to litigate' may also determine whether the doctrine [of res judicata] is to be applied."). A party is considered to have had a "full and fair opportunity" to litigate a claim where it "had the incentive to litigate vigorously in the prior proceeding, and was able in that proceeding to examine the evidence against him, present his own evidence, cross-examine witnesses, be represented by

---

[2] The expression "transaction" in the claim preclusion context "connotes a natural grouping or common nucleus of operative facts." *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999). Among the factors to be considered in deciding whether the facts of the current and prior claims "are so woven together" that they constitute a single claim under this test "are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Id.*

competent counsel, and otherwise enjoy the protections of due process as relates to the issue under dispute." *S.E.C. v. Resnick,* 604 F. Supp. 2d 773, 780, 2009 WL 862882 (D. Md. 2009). *See also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332-33 (1979) (finding that a party had a full and fair opportunity to litigate where, in the prior action, he had "every incentive to litigate ... fully and vigorously" and had enjoyed all the "procedural opportunities" that would be available to him in the second proceeding); *In re Gilson*, 250 B.R. 226, 233 (Bankr. E.D. Va. 2000) ("A full and fair opportunity to defend oneself includes, among other things, the opportunity to file an answer, present witnesses and cross-examine witnesses.").

Courts have also pointed to a lack of sufficient discovery as an additional basis for finding that a party lacked a "full and fair opportunity" to litigate its claim. *See West v. Ruff*, 961 F.2d 1064, 1066 (2d Cir.1992) (citing to the lack of sufficient discovery as one of the reasons why the plaintiff lacked a full and fair opportunity to litigate his claim in state court). *See also Jorden v. Nat'l Guard Bureau*, 877 F.2d 245, 250 n. 21 (3d Cir.1989) (refusing to preclude assertion of claim where defendant was not afforded adequate discovery in prior proceeding).

Here, Plaintiff has woefully failed to meet its burden of proving that *res judicata* or collateral estoppel should apply to preclude defendant Zisha from litigating the proposed defenses identified in the Motion.

ii.) ***Plaintiff may not Prevent defendant Zisha from Having a Full and Fair Opportunity to Litigate the Proposed Defenses***.

As a threshold matter, Plaintiff has not shown, and cannot show, that defendant Zisha had a "full and fair opportunity" to assert the proposed defenses in the bankruptcy action. Indeed, as a mere "party in interest" to that action, defendant Zisha was unable to conduct any written discovery regarding the Plaintiff's conduct in connection with the sale of the Properties, nor did he have the opportunity to examine any witnesses other than Steven Thomes of Blueprint

Healthcare Advisors, the broker of the sale. *See* Exh. 10, ¶ 5. For this reason alone, the doctrines of *res judicata* and collateral estoppel should not bar defendant Zisha from litigating the proposed defenses now.

### iii.) *The Elements of Collateral Estoppel Are Not Met Here.*

Plaintiff has also failed to show how the elements of collateral estoppel have been met in this case. First, notwithstanding Plaintiff's repeated assertion that "the Sale Order addressed the exact same issues Zisha seeks to raise herein," Motion at p. 15, *see id.* at p. 16 ("The Sale Order addressed Zisha's arguments related to the sale"), Plaintiff has utterly failed to show how any of the proposed defenses raised in the Motion were "actually determined" in the bankruptcy action or were "critical and necessary" to the Sale Order. Quite to the contrary, the Sale Order, as well as the Objection filed by defendant Zisha in the bankruptcy action, centered around – and necessitated the resolution of – one narrow and discrete issue: the validity of the sale of the Properties under Section 363 of the Bankruptcy Code. *See generally* Exh. 11. That issue, in turn, necessarily centered around whether the *Stalking Horse* was a "good faith purchaser" under the Section 363(m) of Bankruptcy Code, <u>not</u> whether *Plaintiff* was a "good faith creditor." *See id.*, § IV.A. Notably, the Objection does not contain <u>even a single allegation</u> of wrongdoing on the part of Plaintiff, and instead, focuses entirely on the conduct of the Stalking Horse and the Debtors. *See generally* Exh. 3. Consequently, the only issue that was "actually determined" in the bankruptcy action and the only issue that was "critical and necessary" to Sale Order was whether the "*Successful Bidder*" was a "*good faith buyer* within the meaning of Section 363(m) of the Bankruptcy Code." Exhibit 11, § IV.A. *See SII Liquidation Co*., 10-60702, 2014 WL 5325930, at *16 (Bankr. N.D. Ohio Oct. 17, 2014) (emphasis added) (holding that "good faith finding in a sale order" under § 363(m) is not to be viewed "more expansively than necessary. Instead, the court

reads it as a prophylactic for a good faith purchaser. . . . The process of selling the assets was not a transaction, or series of transactions, designed to legitimize all actions of professionals in the case."). Accordingly, defendant Zisha should not be collaterally estopped from litigating the proposed defenses identified in the Motion for Leave.

### iv.) *The Elements of Res Judicata Have Not Been Met Either.*

Relatedly, this Court should find that the proposed defenses defendant Zisha seeks to assert in this action are not so "identical" to the causes of action in the bankruptcy action so as to be precluded under *res judicata*. First, as discussed, the "cause of action" at issue in the bankruptcy action was the conduct of the good faith *purchaser*, while the proposed defenses here turn upon the conduct of *Plaintiff*. Moreover, in *this* case, notwithstanding Plaintiff's contention to the contrary, defendant Zisha is <u>not</u> seeking to invalidate ("collaterally attack," in Plaintiff's words) the sale under Section 363(m) or *otherwise*. Instead, he is simply seeking a ruling that he is not liable under the Guaranty for any deficiency that resulted from Plaintiff's misconduct. Such a ruling does not in any way require a finding that the sale was invalid. *See In re Werth*, 54 B.R. 619, 622–23 (D. Colo. 1985) ("The issues of Elmer Werth's liability as guarantor, the remaining liability of the farm, if any, to the bank, and the effect of the bank's breach of contract on the personal estate of Werth were not litigated in the farm's bankruptcy proceeding. It was not necessary to the judgment on the sale of the farm free and clear of liens in the farm's bankruptcy proceeding to determine any rights or liabilities of the alleged guarantor. . . The bankruptcy court correctly rejected the bank's affirmative defenses of *res judicata* and collateral estoppel.").

To illustrate, the bankruptcy court rested its ruling validating the sale of the Properties on a finding of "good faith *within the meaning of section 363(m)*." Exhibit 11, § IV. A. Under the law applied in the bankruptcy action (and many other jurisdictions), "good faith *within the meaning*

*of section 363(m)*" is only "lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997). "Collusion" is defined as "an agreement between two or more persons to *defraud* a person of his rights by the forms of law, or to obtain an object *forbidden* by law." Black's Law Dictionary (10th ed. 2014) (emphasis added). Crucially, however, *this* court need <u>not</u> find that Plaintiff committed "fraud" or "collusion" in order to find that the Guaranty is not enforceable against defendant Zisha. Rather, the Guaranty itself plainly provides that the Court need only find that Plaintiff acted with "willful misconduct" in connection with the sale in order to "release, diminish, impair or adversely affect" defendant Zisha's obligations thereunder. *See* Complaint, Exhs. B and C, Article II, Section 2.9. "Misconduct" is much broader than "fraud" or "collusion," as it includes "a dereliction of duty; unlawful, dishonest, or improper behavior. . ." Black's Law Dictionary (10th ed. 2014).

Likewise, "good faith" in contexts other than Section 363(m) is defined differently, and more broadly than, "good faith" under 363(m). Specifically, under Maryland law, "good faith" has been defined as acting in "*any* frivolous or unfounded" manner or "without an innocent intent," which "does <u>not</u> necessarily equate to fraud or deceit." *Admiral Mortgage, Inc. v. Cooper*, 357 Md. 533, 541–43, 745 A.2d 1026 (2000) (emphasis added). *See Republic Ins. Co. v. Prince George's County*, 92 Md. App. 528, 536–37 (1992) ("The expression 'in good faith' has been held to refer to a lack of a good moral intent . . . . Conversely, 'bad faith' means any frivolous or unfounded refusal to pay; it is not necessary that such refusal be fraudulent.). *See also* Black's Law Dictionary 808 (10th ed. 2014) ("Good faith" means "honesty" . . . *or* "a state of mind consisting in faithfulness to one's duty or obligation") (emphasis added). Accordingly, this Court may easily find that Plaintiff breached its duty of "good faith and fair dealing" under the Guaranty

as claimed in the proposed defenses without revisiting the issue of what constitutes "good faith within the meaning of 363(m) of the Bankruptcy Code." *See Cambridge Holdings Group Inc. v. Federal Insurance Co.*, 357 F.Supp.2d 89, 95 (D.D.C. 2004) ("Under District of Columbia law, all contracts contain an implied duty of good faith and fair dealing, which means that neither party shall do *anything* which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.") (emphasis added). Hence, the causes of action defendant Zisha seeks to litigate in this action are not "identical" to the ones litigated in the bankruptcy action.

### III.    As Plaintiff Accuses defendant Zisha of Taking "Two Bites at the Apple," it Conceals the Fact That Its Own Claims are Barred by a Garden-Variety Application of *Res Judicata*.

Although Plaintiff professes to have no knowledge of any facts that support the proposed affirmative defense of *res judicata*, *see* Motion, p. 16, in truth, those facts have been in Plaintiff's possession – and indeed public record – since before this case began.  In the 2016 Action, Plaintiff sued defendant Zisha in this Court for purportedly breaching the Guaranty and sought to recover all amounts purportedly due under the Guaranty, i.e., an "amount no less than $33,839,456.09." *See* Exh. 1.   On January 5, 2017, however, Plaintiff voluntarily dismissed that action "*with* prejudice." Exh. 2.  For Plaintiff to again sue defendant Zisha now for breaching the Guaranty and seek to recover all amounts owed thereunder is impermissible under *res judicata* – the parties to this case (Plaintiff and defendant Zisha) are "identical" to those in the 2016 Action, the cause of action in both cases is identical (breach of the Guaranty), and the dismissal with prejudice in the 2016 Action has preclusive effect. *Letren v. Arch Bay Holdings*, LLC, GJH-15-622, 2016 WL 8716598, at *4 (D. Md. Mar. 25, 2016), motion for relief from judgment denied, GJH-15-0622, 2017 WL 1278839 (D. Md. Apr. 3, 2017) ("the law is clear that a voluntary dismissal with prejudice qualifies as an adjudication on the merits' and thus satisfies that requirement of *res judicata*.") (internal citations omitted). *Metro Media Entm't, LLC v. Steinruck*, CIV.A. DKC 12-

0347, 2014 WL 4268838, at *2 (D. Md. Aug. 27, 2014) ("Absent a specific order by the court, dismissal with prejudice "is subject to the usual rules of *res judicata*."). *See also Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir. 1987) ("Kenny's voluntary dismissal of her counterclaim with prejudice had potential *res judicata* effect.").

Accordingly, Plaintiff is barred from asserting its claims against defendant Zisha in this action and the Motion should therefore be denied.

## IV.    <u>Affirmative Defenses 1, 5, 9 and 14 are Far From Boilerplate.</u>

Plaintiff's allegation that affirmative defenses "1" (The Complaint fails, in whole or in part, to state a claim against defendants upon which relief can be granted), "5" (The allegations were not the proximate cause of plaintiff's alleged injuries), "9" (Plaintiff's claims are barred by the doctrines of *res judicata* and/or collateral estoppel), and "14" (Plaintiff's claims are barred in whole or in part because the damages it seeks are not in the amount sought) are boilerplate is unfounded.  Preliminarily, with respect to affirmative defense 9, defendant Zisha has explained above that Plaintiff's own prior lawsuit provides the necessary facts to support the affirmative defense of *res judicata*.

The bases for affirmative defenses 1, 5 and 15 are equally apparent. First, defenses "1" and "14" are firmly supported by the facts that this action is barred by *res judicata* and that defendant Zisha's liability under the Guaranty is reduced or eliminated under thereunder due to Plaintiff's "willful misconduct" in connection with the sale. Likewise, the fact that Plaintiff's misconduct in connection with the sale caused the sizeable deficiency clearly supports the affirmative defense that "the allegations were not the proximate cause of plaintiff's alleged injuries." Accordingly, there is no legitimate basis for awarding summary judgment on affirmative defenses 1, 5, 9 or 14.

# V. **In the Alternative, the Motion Must be Denied as Premature.**

As a general rule, summary judgment is appropriate only after "adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 719 (4th Cir.1991), cert. denied, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992). Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask. *McCray v. Maryland Dept. of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). For this reason, when a party lacks material facts necessary to combat a summary judgment motion, she may file an "affidavit or declaration that, for specified reasons, [the party] cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). In response, the district court may defer consideration of the summary judgment motion, deny the motion, or "issue any other appropriate order." *MCCray*, 741 F.3d at 483.

Here, to the extent the Court finds that defendant Zisha has failed to create a material dispute as to any of the factual allegations supporting his affirmative defenses, it would be necessary for him, at the very least, to conduct the following discovery: 1) serve written discovery requests to Plaintiff, and receive and review its responses; 2) depose Plaintiff; 3) serve a subpoena for records on Zigmond Brach, the Stalking Horse bidder and review his production; and 4) depose Zigmond Brach. (*See* Exh. 10, ¶ 7).

Importantly, defendant Zisha has not had "adequate time" or "the opportunity" to conduct such discovery prior to the October 15, 2018 discovery deadline, given that defendant Zisha knew about the sale no earlier than early to mid-July, 2018. For in early August, 2018 the parties jointly agreed to stay this action until the Auction on September 7, 2018 so as not to duplicate litigation, and immediately after the Auction, defendant Zisha filed the Objection in the bankruptcy action in

order to invalidate the sale and continue to avoid the need to litigate (let alone conduct discovery) regarding the sale in the instant case. (*See id.* ¶ 5). Furthermore, by the time the bankruptcy Court entered the Sale Order on September 21, 2018, serving written discovery would have been untimely, given that the discovery deadline was then less than 30 days away. (*Id.*) Accordingly, defendant Zisha respectfully requests that the Motion be denied on the alternative ground that defendant Zisha has not had "adequate time" or "the opportunity" to conduct discovery that is essential for his opposition.

## CONCLUSION

For the foregoing reasons, defendant Zisha respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

*/s/ Ari S. Casper*
The Casper Firm, LLC
400 E. Pratt Street, Suite 903
Baltimore, MD 21202
(410) 989-5097 – Phone
(410) 630-7776 – Facsimile
acasper@casperfirm.com
Attorney for Defendant Zisha

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of November, 2018, the foregoing Opposition to Plaintiff's Motion for Summary Judgment was served via electronic filing on all counsel of record, including:

Joseph F. Fiorill (DC Bar #13783)
Katten Muchin Roseman LLP
2900 K Street, NW
North Tower- Suite 200
Washington, D.C. 20007
Attorney for Plaintiff

Paige Barr Tinkham
Katten Muchin Roseman LLP
525 W. Monroe Street
Chicago, IL 60661
Attorney for Plaintiff

*/s/ Ari S. Casper*
Ari S. Casper