# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CAPITAL FUNDING, LLC,** | * | |
| | * | |
| v. | * | Civil Action No. CCB-18-0215 |
| | * | |
| **AVI "ZISHA" LIPSCHUTZ,** *et al.* | * | |

## MEMORANDUM

Plaintiff Capital Funding, LLC (Capital Funding) filed this action against defendants Avi "Zisha" Lipschutz and Larry Lipschutz[1] alleging breach of a loan guaranty. On October 10, 2019, Capital Funding dismissed with prejudice the action against Z. Lipschutz. (ECF 53 and 54). Now pending before the court are Capital Funding's motion to compel and for sanctions (ECF 25), Capital Funding's motion for summary judgment (ECF 34), and Larry Lipschutz's motion for leave to file an amended answer (ECF 45).

## FACTS AND PROCEDURAL HISTORY

On March 4, 2014, Capital Funding loaned $36,856,627 to four Delaware limited liability companies (the "borrowers"). (Loan Agreement, Sec. 2.1, ECF 34-3). To guarantee the loan, Capital Funding entered into a guaranty of payment and performance, also dated March 4, 2014, with guarantors Z. and L. Lipschutz and Dov Newmark. (Guaranty of Payment and Performance, Sec. 1.1, ECF 34-7). Under the terms of the guaranty, each guarantor:

> irrevocably and unconditionally guarantees to Lenders and Agent . . . the payment of the Debt and the performance of the other Loan Obligations as and when the same shall be due and payable . . . Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Loan Obligations as a primary obligor . . . Guarantor has agreed to act as a surety to Lender.

(*Id.*). The guaranty limited Larry Lipschutz's obligations to $10,000,000. (*Id.*).

After the borrowers defaulted, Capital Funding, the borrowers, and the guarantors entered into a forbearance agreement, which extended the loan repayment date until June 30, 2016.

---

[1] Zisha Lipschutz will be referred to as Z. Lipschutz, and Larry Lipschutz will be referred to as L. Lipschutz.

1

(First Forbearance Agreement, Sec. 4.4, ECF 46-2). The borrowers failed to repay the loan by the new repayment date, and Capital Funding filed suit against the guarantors on July 5, 2016. (Civil Case No. ELH-16-2485, ECF 1, Complaint). The parties were able, however, to resolve the dispute and on December 30, 2016, entered into a second forbearance agreement, wherein the parties agreed to reduce Z. and L. Lipschutz's guarantor liability to $6,250,000 each, and release Newmark from his obligations. (Second Forbearance Agreement, Sec. 5.2, ECF 34-6). The second forbearance agreement stated that:

> Section 1.1(b) of the Guaranty Agreement shall be deleted and replaced with: 'Notwithstanding anything contained herein to the contrary, (i) the guaranty by Larry under paragraph (a) of this Section, and any payments required to be made by Larry under Section 1.4, shall be limited to and shall not exceed $6,250,000 in the aggregate, and (ii) the guaranty by Zisha under paragraph (a) of this Section, and any payments required to be made by Zisha under Section 1.4, shall be limited to and shall not exceed $6,250,000 in the aggregate.

(*Id.* Sec. 5.2.1). The second forbearance agreement also extended the loan repayment date to December 30, 2017. (*Id.* Sec. 1.1.3; Affidavit of Glen Dwyer, Managing Director of Capital Funding ¶ 5, ECF 34-2). In light of the second forbearance agreement, on January 5, 2017, Capital Funding dismissed its pending action against Z. and L. Lipschutz and Newmark with prejudice. (Civil Case No. ELH-16-2485, ECF 13, Notice of Dismissal with Prejudice).

L. Lipschutz contends that he never agreed to the guaranty, the first forbearance agreement, or the second forbearance agreement. In his affirmation attached to his opposition to Capital Funding's motion for summary judgment, he states that he signed only the signature pages, and was not provided copies of the underlying documents. (Affirmation of Larry Lipschutz in Opp'n to Pl.'s Mot. for Summary Judgment ¶ 7, ECF 44-1). He states he "was never sent, did not negotiate, and did not see any forbearance agreement" and "all [he] was sent were signature pages for [him] to sign and have [his] signature notarized." (*Id.* ¶¶ 9, 10). L.

Lipschutz also states that he "never authorized anyone to attach [his] signature pages to the Guaranty or the Forbearance Agreement" and "it was [his] understanding that the documents to which [his] signature pages would be attached were meant for [him] to secure repayment of the loan with [his] investments in the various Massachusetts nursing homes involved in this litigation." (*Id.* ¶¶ 11, 12).

The borrowers defaulted and failed to repay the loan by December 30, 2017. (Affidavit of Glen Dwyer ¶ 5). Capital Funding then filed the complaint in this case on January 23, 2018, alleging that Z. and L. Lipschutz breached their guaranty obligations.

## STANDARD OF REVIEW

Motion to Amend:

Leave to amend should be freely granted under Fed. R. Civ. P. 15(a), and amendments are generally accepted absent futility, undue prejudice, or bad faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). When a party wishes to amend after the deadline set in the scheduling order, the party must, under Fed. R. Civ. P. 16, show good cause to modify the scheduling order deadlines before also satisfying the Rule 15(a) standard for amendment. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Prowess, Inc. v. RaySearch Laboratories, AB*, 953 F. Supp. 2d 638, 647–48 (D. Md. 2013).

Motion for Summary Judgment:

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party*

3

*of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

### Motion to Amend

L. Lipschutz seeks to amend his answer to deny that he saw or agreed to the guaranty of payment, and has provided a sworn affirmation in support. (Affirmation of Larry Lipschutz in Supp. of his Mot. for Leave to File an Am. Answer, ECF 45-1).[2] The answer, filed on behalf of the defendants including L. Lipschutz on February 23, 2018, admitted that the defendants executed the guaranty agreement. (Compl. ¶ 14; Answer ¶ 14). L. Lipschutz states in his

---

[2] In his opposition to Capital Funding's motion for summary judgment, L. Lipschutz also provides an affirmation stating that he "was never sent, did not negotiate, and did not see any forbearance agreement, including the Second Forbearance Agreement . . . until the commencement of this case," (Affirmation of L. Lipschutz in Opp'n to Pl.'s Mot. ¶ 9), but he does not seek to amend his answer to deny that he signed the second forbearance agreement, (Proposed Amended Answer ¶ 22, ECF 45-2; Compl. ¶ 22). Therefore, the court will treat L. Lipschutz's motion to amend as seeking to amend his answer regarding the guaranty of payment, but not the second forbearance agreement.

4

affirmation that he never discussed with his then-lawyer that he did not see or sign the guaranty, that he was never shown a draft of the answer before it was filed, and that he first learned that Paragraph 14 (regarding executing the guaranty) had been admitted on November 18, 2018. (Affirmation of L. Lipschutz in Supp. of his Mot. for Leave ¶¶ 6, 10).

L. Lipschutz seeks leave to amend his answer after the deadline for amendment of pleadings.[3] Therefore, he must show good cause. "Rule 16(b)'s good cause standard emphasizes the diligence of the party seeking amendment." *RFT Mgmt. Co., LLC v. Powell*, 607 F. App'x 238, 242 (4th Cir. 2015).[4] For example, a delay because "counsel reviewed his defenses to the guaranty letter at issue in this case and noted that there was a defense available to Mr. Parvizian that he had not raised in his answer" is "far short of what is required to satisfy the good cause standard." *Nourison*, 535 F.3d at 298.

On November 5, 2018, counsel for L. Lipschutz informed the court and Capital Funding for the first time that L. Lipschutz claimed that he did not agree to the guaranty and "that it was his belief that he was only agreeing to secure the loan with his investments in the various homes."[5] (Letter from A. Garfunkel, ECF 33-1). Counsel represented that L. Lipschutz did not previously respond to discovery requests because "he did not and does not believe that he has any liability under any guarantee that forms the basis of the Maryland Action." (*Id.*) L. Lipschutz also argues in his motion for leave to amend, filed December 3, 2018, that "he was unaware that an Answer admitting that he signed the Guaranty was filed until just a couple of weeks ago." (L. Lipschutz Mot. for Leave to File Am. Answer at 3, ECF 45).

---

[3] The initial scheduling order in this case set a deadline of April 9, 2018, for amendment of pleadings. (ECF 7). Although the case was stayed twice, both of those stays occurred after the April 9, 2018, deadline.

[4] Unreported decisions are cited for the soundness of their reasoning, not for any precedential value.

[5] Counsel for L. Lipschutz also argues in the November 5, 2018, letter that if L. Lipschutz did not agree to the guaranty, this court also does not have personal jurisdiction over him since personal jurisdiction is based on the guaranty. (Letter from A. Garfunkel, at 2). A party waives the defense of lack of personal jurisdiction by failing to timely raise it in their responsive pleading. Fed. R. Civ. P. 12(h). Although L. Lipschutz has never raised the defense of lack of personal jurisdiction in a motion to this court, to the extent he does, he has waived it.

5

L. Lipschutz has not demonstrated the diligence necessary to meet the Rule 16 good cause standard. Rather, he has failed to participate in this case, and now seeks, at the last minute and after the close of discovery, to contest a basic fact that Capital Funding thought was undisputed. Further, this is not a situation where the pleading could not have been timely amended despite the diligence of the party. Instead, this alleged fact was within L. Lipschutz's knowledge the entire time. Therefore, L. Lipschutz's motion to amend his answer to deny that he signed the guaranty will be denied.

L. Lipschutz also incorporates in his motion arguments contained in Z. Lipschutz's motion to amend. In his motion, Z. Lipschutz sought to extend the discovery deadline and amend his answer to include affirmative defenses related to Capital Funding's alleged misconduct in the proposed sale of collateral under the loan agreement. The sale was the subject of litigation in the U.S. Bankruptcy Court for the Eastern District of New York. (Case No. 18-40816, ECF 42-3 to 42-9, 42-11).

The court finds that L. Lipschutz has not shown good cause to amend the scheduling order to allow him to conduct discovery regarding the alleged misconduct. Z. Lipschutz contended in his motion that he first received notice of the proposed sale on September 7, 2018.[6] On September 9, 2018, he filed an objection in bankruptcy court, alleging improprieties with the proposed sale. (Objection to Motion for Authority to Prosecute, ECF 42-3). Z. Lipschutz argued that he could not have reasonably met the discovery deadline of October 15, 2018, because "even

---

[6] L. Lipschutz states in his affirmation attached to his opposition to Capital Funding's motion for summary judgment that he "did not receive notice of the sale of any of the nursing homes involved in this litigation." (Affirmation of L. Lipschutz ¶ 16). L. Lipschutz, however, incorporates Z. Lipschutz's argument wholesale, and does not argue that his circumstances are different. Therefore, the court will assess the facts and arguments as they are presented in Z. Lipschutz's motion. Further, even if the court were to take into account L. Lipschutz's alleged lack of notice of the proposed sale, his affirmation provides no context as to why he did not receive notice, especially when Z. Lipschutz did. To the extent that he did not receive notice based on his own lack of diligence, that would not provide good cause to reopen discovery. For example, the court notes that the parties (including L. Lipschutz, through counsel) filed a joint motion to stay litigation on August 7, 2018, which made reference to the upcoming auction of the properties on September 7, 2018. (ECF 19).

if defendant Zisha would have issued written discovery requests regarding this misconduct as early as September 21, 2018, i.e., the day the Sale Motion was granted, the requests would have been untimely, as the 30-day deadline for responding to such requests would have occurred beyond the October 15, 2018 deadline." (Z. Lipschutz's Mot. to Amend at 11, ECF 29-1). Z. Lipschutz, however, knew about the alleged misconduct as early as September 9, when he filed his objection, and serving discovery on that date would have been timely. Therefore, the court finds that Z. Lipschutz was not diligent in pursuing discovery and has not shown good cause for reopening discovery, and that L. Lipschutz, through incorporation of Z. Lipschutz's arguments, also has not shown good cause.[7]

Motion for Summary Judgment

To state a *prima facie* claim for breach of contract under Maryland law, a plaintiff must establish that "the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001) (citing *Continental Masonry Co., Inc. v. Verdel Const. Co.*, 279 Md. 476, 480 (1977)).[8] A guaranty is a type of contract. *Gen. Motors Acceptance Corp. v. Daniels*, 202 Md. 254, 261 (1985).

Here, the undisputed facts show that Capital Funding executed a guaranty of payment and second forbearance agreement, both also bearing the signature of L. Lipschutz. The borrowers did not repay the loan obligations by December 30, 2017, the date the loan was due under the second forbearance agreement. Under the terms of the guaranty and the second forbearance agreement as stated above, upon default, Capital Funding was entitled to payment from L.

---

[7] Because the court finds that L. Lipschutz cannot show evidence of misconduct sufficient to survive summary judgment, it does not address the motion to amend the answer to add an affirmative defense of misconduct on the part of Capital Funding relating to the sale of the properties. The court notes that this amendment is different from amending the answer to deny signing the guaranty, as the events giving rise to this amendment – the sale of the collateral properties – did not occur until after the deadline to amend.

[8] The parties do not dispute that Maryland law applies.

7

Lipschutz.

L. Lipschutz does not dispute that he would owe payment under the terms of the guaranty and second forbearance agreement upon the borrowers' default. Instead, he states that he never agreed to the guaranty or the second forbearance agreement because, although he signed the signature pages, he was never sent the underlying documents.[9] (Affirmation of L. Lipschutz in Opp'n to Pl.'s Mot. for Summary Judgment ¶ 7, 9). As explained above, L. Lipschutz claims that he instead thought "the documents to which [his] signature pages would be attached were meant for [him] to secure repayment of the loan with [his] investments in the various Massachusetts nursing homes involved in this litigation." *Id.* ¶ 12.

As L. Lipschutz's counsel recognizes, "[u]nder Maryland law, absent fraud, duress, or mutual mistake, one who signs a contract without first reading it to ascertain its contents cannot avoid the contract's effect by pleading ignorance." *Cornell v. Council of Unit Owners Hawaiian Village Condo., Inc.*, 983 F. Supp. 640, 646 (D. Md. 1997). L. Lipschutz attempts to distinguish his claim by arguing that "Capital is seeking to hold Mr. L. Lipschutz liable under a Guaranty that, on its face, Mr. L. Lipschutz did not agree to or execute." (L. Lipschutz Opp'n to Mot. for Summary Judgment at 3, ECF 44).

L. Lipschutz's argument falls squarely within the rule that one who signs a contract cannot plead ignorance as to its contents. It is undisputed that L. Lipschutz signed the signature pages of the guaranty and the second forbearance agreement, both of which are notarized. L. Lipschutz admits that he knew he was signing a guaranty; he states only that he did not know that he was guaranteeing the loan with his personal assets. (Affirmation of L. Lipschutz in Opp'n to Pl.'s Mot. for Summary Judgment ¶ 12). But a party "who signs a contract is presumed

---

[9] Although, as discussed *supra*, L. Lipschutz cannot amend his pleading to deny that he signed the guaranty, the court will nevertheless address his raising of the issue in his opposition to Capital Funding's motion for summary judgment.

8

to have read and understood its terms." *Dynacorp Ltd. v. Aramtel Ltd.*, 208 Md. App. 403, 483 (2012) (citation omitted); *see also Windesheim v. Larocca*, 443 Md. 312, 328–29 (2015). This is so even if the party was provided only with a signature page. *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014).[10]

L. Lipschutz does not allege that he was unable to read the guaranty or the second forbearance agreement, nor does he allege fraud, duress, or mutual mistake. L. Lipschutz cannot now claim ignorance of the contents of the guaranty or the second forbearance agreement because he neglected to read them. Therefore, even assuming that L. Lipschutz did not know the terms of the guaranty and the second forbearance agreement that he signed, he is still bound by their terms.

L. Lipschutz also incorporates the arguments from Z. Lipschutz's opposition to Capital Funding's motion for summary judgment.[11] Specifically, Z. Lipschutz argues that Capital Funding's complaint is barred by res judicata and argues that its alleged misconduct related to the proposed sale is a material breach of the guaranty.

Res Judicata

L. Lipschutz, incorporating the arguments in Z. Lipschutz's opposition, argues that Capital Funding's complaint is barred by res judicata. Res judicata "bars a party from relitigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). "[T]he law that would be

---

[10] *Marciano* was cited favorably by the unreported Court of Special Appeals of Maryland decision *Ghadry v. Penson Fin. Servs., Inc.* 223 Md. App. 722, No. 1808, 2015 WL 6110293, at *4 (May 7, 2015). L. Lipschutz also argues that his signature page to the guaranty has an indication at the bottom that it was version 2 of the guaranty, while the body of the agreement Capital Funding attached to its motion indicates at the bottom that it was version 8 of the guaranty. (L. Lipschutz's Opp'n to Mot. for Summary Judgment at 4). Even if this does raise a genuine dispute of material fact regarding the contents of the guaranty, there is no such dispute with regard to the second forbearance agreement which incorporated and modified L. Lipschutz's obligations under the guaranty.

[11] *See* L. Lipschutz's Opp'n to Mot. for Summary Judgment at 7 ("Mr. L. Lipschutz adopts and incorporates by reference the facts and arguments set forth in Defendant 'Zisha' Lipschutz's Opposition to Plaintiff's Motion for Summary Judgment.").

applied by state courts in the State in which the first federal diversity court sits determines the claim-preclusive effect of the judgment rendered in the first action." *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 218 (4th Cir. 2006) (internal quotations and alteration omitted). Under Maryland law, the elements of res judicata, or claim preclusion, are: (1) the parties in the present litigation are the same or in privity with the parties in the earlier dispute; (2) the claim presented in the current action is identical to the one determined in the prior adjudication; and (3) there has been a final judgment on the merits. *Laurel Sand*, 519 F.3d at 162.

As explained above, in 2016, Capital Funding filed a complaint against L. Lipschutz related to a breach of the guaranty of payment. This 2018 complaint alleges breach of the guaranty as modified by the December 30, 2016, second forbearance agreement. The breach based on the second forbearance agreement did not occur until the revised loan repayment date of December 30, 2017, so could not have been brought in the 2016 action, which was voluntarily dismissed on January 15, 2017. Therefore, the claims are not identical, and res judicata does not bar Capital Funding's claim.

<u>Sale-related defenses</u>

L. Lipschutz, incorporating Z. Lipschutz's arguments in his opposition to Capital Funding's motion for summary judgment, argues that Capital Funding engaged in misconduct related to the sale of properties that were collateral under the loan. He argues that the alleged misconduct is a material breach and excuses performance, and that the misconduct caused an unnecessarily large deficiency (because the collateral was sold for an artificially low price), which the guarantors should not be responsible for.

The sale of the collateral property was the subject of litigation in the U.S. Bankruptcy Court for the Eastern District of New York. On September 9, 2018, Z. Lipschutz filed an

10

objection in that litigation to the motion for sale of the property, in which he alleged that the sale of the properties was manipulated to favor an inside bidder and that the procedures were otherwise defective. (Objection to Motion for Authority to Prosecute). The court denied the objection and approved the sale. (Order Approving and Authorizing Sale, ECF 42-11).

As an initial matter, it appears the proposed sale has been terminated, so this defense may be moot. (Capital Funding's Omnibus Suppl. Brief Regarding Dismissal of Z. Lipschutz at 2, ECF 56). Even if not, L. Lipschutz provides no evidence to support the allegations that Capital Funding acted improperly in the sale. Z. Lipschutz's objections[12] filed in the bankruptcy court only mention Capital Funding twice:[13] first, that it "did not serve Mr. Lipschutz with its March 22, 2018 motion to lift the automatic stay to foreclose on the Properties" and second, a bare assertion that the borrowers "convinced" Capital Funding "to go along with the insider deal." (Objection to Motion for Authority to Prosecute ¶¶ 10, 20). Neither Zisha nor Larry Lipschutz provide any other sworn statements or other evidence to show Capital Funding's alleged misconduct. Therefore, there is no genuine dispute of material fact regarding Capital Funding's alleged misconduct.[14]

<u>Motion to Compel and for Sanctions</u>

Capital Funding served L. Lipschutz with discovery requests on May 9, 2018.

---

[12] Z. Lipschutz provided a declaration adopting and incorporating all facts asserted in his objection. (Decl. of Zisha Lipschutz, ECF 42-4).

[13] The objection refers to "Capital Finance." It appears from Z. Lipschutz's description of events in his briefing (*see* Z. Lipschutz's Opp'n at 5) that "Capital Finance" refers to "Capital Funding."

[14] Capital Funding also argues that L. Lipschutz is barred by collateral estoppel from attacking the findings of the bankruptcy court that the sale process was proper. Generally, the preclusive effect of a federal court judgment is determined by federal common law. *In re Muhs*, 923 F.3d 377, 385 (4th Cir. 2019). Collateral estoppel may apply to preclude relitigation of those matters actually considered and decided by a bankruptcy court. *1616 Reminc Ltd. Partnership v. Comm. Land Title Ins. Co.*, 778 F.2d 183, 187 (4th Cir. 1985). The parties dispute whether the alleged misconduct of Capital Funding, as opposed to that of the debtors and purchaser, was actually decided by the bankruptcy court. Regardless, Capital Funding does not show that L. Lipschutz was provided notice and an opportunity to litigate in bankruptcy court. *See Westmoreland Coal Co., Inc. v. Sharpe ex rel. Sharpe*, 692 F.3d 317, 331 (4th Cir. 2012) (a party seeking to rely on collateral estoppel must establish "that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum"). Therefore, the court declines to reach the issue of collateral estoppel.

11

(Discovery Requests, ECF 25-1). Both parties agree that L. Lipschutz did not respond to the discovery requests within the required time period. (Mot. to Compel and for Sanctions at 2, ECF 25; Affirmation of L. Lipschutz in Opp'n to Pl.'s Mot. for Summary Judgment ¶ 14 ("I did not previously respond to plaintiff's discovery requests because I did not and do not believe that I have any personal liability under the Guaranty, or any other loan document, beyond my investments in the nursing homes.")). L. Lipschutz also did not respond to the motion to compel and for sanctions. (Request for Ruling on Mot. to Compel and for Sanctions, ECF 30).

Capital Funding requests that L. Lipschutz be ordered to pay Capital Funding's attorney fees and other expenses incurred in preparing the motion for sanctions. A court may order sanctions if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). "A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." *Id.*(1)(B).

Capital Funding attempted in good faith to confer with L. Lipschutz in an effort to obtain discovery, both through counsel and, after counsel withdrew, by contacting L. Lipschutz directly. (Mot. to Compel and for Sanctions, at 3). Under Rule 37, the court will grant the motion to sanction L. Lipschutz and will order him to pay for Capital Funding's attorney fees and other expenses incurred in preparing the motion for sanctions. The court will deny the motion to compel as moot.

Damages

Capital Funding asserts that L. Lipschutz is liable for $6,250,000 plus interest, fees and costs. In his opposition to Capital Funding's motion for summary judgment, L. Lipschutz

12

contests liability but not the amount due if he is liable under the agreements. Therefore, the court will enter judgment in favor of Capital Funding against L. Lipschutz in the amount of $6,250,000 plus pre-judgment interest under Maryland law,[15] post-judgment interest pursuant to 28 U.S.C. 1961, and fees and costs pursuant to Fed. R. Civ. P. 54(d), Section 10.4 of the second forbearance agreement, and Section 1.7 of the guaranty of payment.

## CONCLUSION

For the reasons stated above, the court will deny L. Lipschutz's motion to amend, grant Capital Funding's motion for summary judgment, and grant in part and deny as moot in part Capital Funding's motion to compel and for sanctions. A separate order follows.

11/14/19
Date

Catherine C. Blake
United States District Judge

---

[15] The award of pre-judgment interest in a diversity case is governed by state law. *See U.S. v. Dollar Rent A Car Systems, Inc.*, 712 F.2d 938, 940 (4th Cir. 1983); *Key Gov. Fin., Inc. v. E3 Enterprises, Inc.*, 2 F. Supp. 3d 741, 756 (D. Md. 2014) (applying Virginia law to determine pre-judgment interest in a diversity case). "Pre-judgment interest is allowable as a matter of right when 'the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date.'" *Buxton v. Buxton*, 363 Md. 634, 656–57 (2001) (citation omitted). Unless otherwise provided for, "pre-judgment interest shall be calculated at the legal rate of six percent per annum." *Harford Cnty. v. Saks Fifth Ave. Distribution Co.*, 399 Md. 73, 96 (2007)(citing Md. Const. Art. III, § 57). According to the guaranty of payment, "if all or any part of the Loan Obligations shall not be punctually paid when due . . . Guarantor shall, immediately upon demand by Lenders or Agent . . . [pay] the amount due." (Guaranty of Payment, Sec. 1.4). Although the amount due on the loan exceeded $6,250,000 (Affidavit of Glen Dwyer ¶¶ 5–6), L. Lipschutz's obligation, as modified by the second forbearance agreement, was capped at $6,250,000. (Second Forbearance Agreement, 5.2.1). L. Lipschutz therefore owed an amount certain, $6,250,000, at the time of demand by Capital Funding. It is not clear when Capital Funding first made the demand. Therefore, in its motion for fees and costs, Capital Funding should also address the date when it contends interest began to run.